## ROSA PELLAT v. GEORGE DECKER.

### No. 2618.

1. **Homestead—Evidence.**—A defendant in a suit involving his homestead right in urban property which had been actually and continuously occupied by himself and family as a homestead from the year 1872 until the institution of the suit in 1882, can not be affected in his homestead rights by evidence that he had executed and placed on record a designation of his homestead on other property which he had never lived on as a home. Such evidence of written designation should have been excluded. The actual occupancy is a conclusive designation of homestead against which no declaration to the contrary can be considered.

2. **Same—Statute Construed.**—Articles 2343·and 2366, which provide a method where a rural homestead is a part of a larger tract of land whereby the homestead may be designated and the excess subject to execution may be identified, have no application to homesteads in towns and cities.

ERROR from Nueces. Tried below before Hon. J. C. Russell.
The opinion states the case.

*McCambell & Welsh,* for plaintiff in error.—The court erred in admitting over the objections of the counsel of the defendant herein on the trial of this cause the instrument of writing purporting to be the designation of the homestead of the defendant, the instrument being of date January 5, 1880, and the objections of defendant being that it was incompetent and irrelevant, and that there was no law authorizing a designation of a homestead of this character. Medlenka v. Downing, 59 Texas,

32; Jacobs, Bernheim & Co. v. Hawkins et al., 63 Texas, 1; Radford and Wood v. Lyon, 65 Texas, 471; Ruhl v. Kaufman & Runge, 65 Texas, 723; Stringer v. Swenson, 63 Texas, 7.

No brief for defendant in error has reached the Reporter.

STAYTON, CHIEF JUSTICE.—The property in controversy, consisting of lots 5 and 6 in block 15, in Rio Grande City, was continually occupied by Victor Pellat and the plaintiff in error, his wife, as their homestead from sometime in the year 1872 until the institution of this suit on June 7, 1883.

Prior to January 6, 1880, Victor Pellat was indebted to John Decker, and on that day he and his wife executed a mortgage to Decker on the homestead lots to secure the debt, which then amounted to $3000.

Decker became uneasy about his security, and negotiations were had between the parties which resulted in the execution of a paper by Pellat and wife to Decker, dated April 27, 1881, which on its face conveyed to Decker the two lots then and before that time occupied by Pellat and wife as their home.

The consideration expressed in this deed was the exact sum of the principal and interest due to Decker to that date. It is claimed that this indebtedness was thus extinguished, and that the conveyance was intended to be as appeared—absolute. In the agreement for the execution of this deed, however, it was understood that other papers should be executed between the parties, and these seem to have been in course of preparation by a lawyer at the time the deed of April 27, 1881, was executed and acknowledged. In fact it seems that the officer who took the pivy acknowledgment of Mrs. Pellat to the deed, and who seems to have carried on the negotiations between the parties, received the deed under a promise to hold it and not to place it on record until the other papers were executed. One of the papers which the parties had agreed should be executed at the time the deed was, was executed, but bears date May 1, 1881, and therein John Decker bound himself to reconvey the property to Pellat and wife when they should pay to him $3470, an indebtedness evidenced by a negotiable promissory note of date May 1, 1881, executed by Pellat to Decker and payable two years after its date without interest until after maturity.

This note was for the exact sum due from Pellat to Decker on April 27, 1881.

By the instrument before referred to Pellat and wife bound themselves to pay that promissory note.

Decker also executed a lease of the property to Pellat and wife for the term of two years at an annual rental of three hundred dollars, and this paper was executed as of date May 2, 1881.

Prior to the execution of the mortgage to John Decker, of date January 6, 1880, at whose instigation does not appear, Pellat and wife signed and acknowledged what is termed a designation of their homestead, in which there is a statement of the different lots owned by him and a declaration that lot No. 1 in block 13 was their homestead, and that all other property there enumerated, including lots 5 and 6 in block 15, on which they were then actually residing, was not embraced in the homestead, but was subject to forced sale.

It does not appear the lot thus designated as homestead was ever improved or in any manner used for homestead purposes; but as before said. it does appear that lots 5 and 6 in block 15 were actually occupied continuously by Pellat and wife as their home from some time in the year 1872 until this suit was brought, when they were excluded from it under a writ of sequestration sued out by the plaintiff. It further appears that the paper termed designation of homestead was recorded.

John Decker having died, this action was brought by George Decker, one of his heirs, to recover the two lots, and there was a judgment rendered in his favor, from which, Victor Pellat having died, his widow prosecutes a writ of error.

Much parol evidence was offered by the parties for the purpose of showing on the one side that the deed of April 27, 1881, was intended to be an absolute conveyance, without any condition of defeasance and in satisfaction of the indebtedness of Pellat to Decker; and on the other side to show that it was understood and agreed by the parties that the deed should only operate as a security for the debt then existing and kept in force by the note of date May 1, 1881.

The charges given were lengthy, and those asked by defendant and refused by the court were numerous. On the giving and refusing to give charges are based many assignments of error, which it will be unnecessary to consider.

The defendant in error was permitted over the objection of Pellat and wife to offer in evidence the paper purporting to be a designation of homestead, to which we have before referred; and while the court informed the jury that that *alone* could not deprive the property of its homestead character, the charge was calculated to induce the jury to believe that it was entitled to some consideration and weight upon the question whether the property was homestead.

The court was asked by the defendant to instruct the jury that the paper offered to show designation of homestead " could not operate as such designation and relieve other property actually used and occupied by them as a home or place of exercising the business of the head of the family of its homestead character." This charge was refused.

We are of the opinion that the evidence objected to should have been excluded, for it was not entitled to any weight whatever, nor under the

uncontroverted facts to be introduced in evidence in support of any issue in the case. Pellat and wife, as before said, were actually and continu-ously using the property as their home from 1872 until this action was brought, and this as to such property is the conclusive designation of homestead, against which no declaration to the contrary can be allowed any weight. The law provides a method where a rural homestead is a part of a larger tract whereby the homestead may be designated and the excess subject to execution identified. Rev. Stats., arts. 2343–66.

These laws, however, have no application to homesteads in towns or cities, nor to such a question as that before us. There is no pretense that John Decker was deceived by the act of Pellat and wife in making and recording the paper called a designation of homestead; on the contrary he seems to have been fully aware that it would not protect his mortgage subsequently executed, and as a fact he knew that Pellat and wife were actually occupying the property as their home on April 27, 1881.

The evidence objected to should have been excluded, and the charge asked should have been given, to exclude from the jury any foundation for belief that they were authorized to look to the paper objected to for the purpose of ascertaining whether the property in controversy was the homestead of Pellat and wife on April 27, 1881.

The court did not inform the jury what facts would give homestead character to property, and in the charge to which we have referred left the jury to infer that in ascertaining whethei the property was homestead they might consider the evidence objected to. All this was calculated to mislead; and for the error in admitting the evidence referred to, and in refusing to give the charge requested, the judgment of the court below will have to be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*

Opinion February 1, 1889.