SAMUEL PACKWOOD DORSEY ET AL. v. OLIVE STERNENBERG & COMPANY ET AL.

Decided April 11, 1906.

**1.—Statement of Facts—Amending Same—Filing After Prescribed Time.**

There is no authority for amending a statement of facts after the time limited by law for filing the same. The trial court has no power after the time prescribed by law to approve and make a part of the record a statement of facts to amend or supersede one certified and filed within the time.

**2.—Identity of Ancestor with Patentee—Burden and Sufficiency of Proof.**

Certain lands were patented to one, Greenberry Dorsey. Both the plaintiffs and the defendants had an ancestor by that name, and claimed that he was the patentee. Facts considered and held insufficient to support a verdict for defendants.

**3.—Presumption of Conveyance.**

The case of Fletcher v. Fuller, 120 U. S. 534, distinguished, and held that the doctrine of that case, insofar as it recognizes a presumption of a conveyance as a presumption of law, is not admitted in this State.

Appeal from the District Court of Hardin. Tried below before Hon. L. B. Hightower.

*Wm. P. Ellison* and *Chester & Chester,* for appellants.—The Appellate Court will reverse a cause notwithstanding the verdict of the jury, in case the findings are contrary to the great weight and preponderance of the evidence. Rev. Stats., art. 1027; Bexar B. & L. Assn. v. Newman, 25 S. W. Rep., 461; McNeil v. O'Connor, 79 Texas, 227; Lloyd v. Brinck, 35 Texas, 7; St. Louis S. W. Ry. v. Adams, 58 S. W. Rep., 1038; Thomson v. Hubbard, 70 S. W. Rep., 572; Stevens v. Masterson, 39 S. W. Rep., 295; Lee v. International & G. N. Ry., 89 Texas, 588; Williams v. Jones, 33 S. W. Rep., 1092; McCammant v. Roberts, 25 S. W. Rep., 731; Adoue v. Tankersley, 28 S. W. Rep., 346; House v. Robertson, 89 Texas, 682.

There is no such identity between the names Greenberry or Greenbury Dorsey, and the name Greenberry Hamilton Dorsey, as to create a presumption of identity of the party last named, with the party named in a patent under the first name. Golden v. Patterson, 56 Texas, 628; Ambs v. Chicago, etc., Ry. Co., 46 N. W. Rep., 321.

When the testimony of the witnesses on a material fact has been by deposition only, the reason of the rule ascribing to the verdict of juries the presumption of correctness does not apply, and on appeal the testimony will be reviewed and judgment rendered according to the justice of the case. Thorn v. Frazier, 60 Texas, 259; Henderson v. Jones, 1 Texas Law Review, p. 356; 2 Posey U. C., 530.

It is the duty of a trial court to instruct the jury to return a verdict in favor of the party whom the evidence shows is entitled thereto where there is no evidence before the jury by which a reasonable mind could conclude otherwise. Montgomery v. Carlton, 56 Texas, 361.

The District Court should grant a new trial when satisfied that injustice has been done by local prejudice and other causes which the District Court should have prevented. Texas & P. Ry. Co. v. Casey, 52 Texas, 112; Galveston, H. & S. A. Ry. Co. v. Braken, 59 Texas, 71.

*Denman, Franklin & McGown, Taliaferro, Nall & Dies, Lanier & Martin and W. W. Cruse,* for appellees.—It is only where there is no evidence to support the verdict of a jury, or where the probative force of the testimony is so weak that it only raises to a mere surmise or suspicion of the existence of the facts necessary to be established to authorize the verdict that the Appellate Court will disturb such verdict. Joske v. Irvine, 91 Texas, 582; House v. Robertson, 89 Texas, 685; McNeil v. O'Connor, 79 Texas, 229.

Where it appears from the evidence that the title asserted by plaintiffs in a suit for recovery of land, has not been asserted by them, or those under whom they claim for a long lapse of time, that defendants and those under whom they claim, have for a great number of years asserted ownership to the land sued for, and their acts are consistent with ownership in themselves, and inconsistent with ownership in others, the jury is authorized to find whatever title the plaintiffs, or those under whom they claim, may have had at one time, might have been parted with. Where to non-claim of plaintiffs is added other acts inconsistent with

ownership, this probability that the title may have been parted with is stronger. In such cases the facts cast upon the plaintiffs the burden of disproving the fact that the title may not have been parted with. The questions in such cases are whether the facts are of such character as to make it reasonably probable that the title of defendants had a lawful origin, and whether the acts of the parties with reference to the land are best explained by such reasonable probability. If the jury answers these questions affirmatively, then it is their duty to find for the defendants. Fletcher v. Fuller, 120 U. S., 534; Bringhurst v. Texas Co., 87 S. W. Rep., 893; Fuller v. Fletcher, 44 Fed. Rep., 34; United States v. Devereux, 90 Fed. Rep., 187; Grayson v. Lofland, 52 S. W. Rep., 123.

JAMES, Chief Justice.—The action is to recover several tracts of land of 320 acres each patented to Greenbury Dorsey by virtue of duplicate Thomas Toby scrip.

After instructing the jury to find for certain portions of the land in favor of certain defendants, the court submitted the case as between the other parties upon the issue whether the Greenbury Dorsey through whom the plaintiffs claim, was the same Greenbury Dorsey to whom the lands were granted, or whether the Greenbury Dorsey under whom defendants claim was the original grantee, and the charge further instructed the jury to find for defendants unless plaintiffs had shown by the preponderance of evidence that their ancestor was the grantee.

A statement of facts is in the record which was approved and filed within the period prescribed by law. This statement was one prepared by the judge himself. A motion has been filed here by appellees accompanied by another statement of facts certified to by the judge as follows:

· "Having this 27th day of October, 1905, in open court heard and granted the motion of the defendants in the above cause to correct the statement of facts heretofore filed herein and to file a statement of additional facts and a corrected statement of facts herein, and having examined the original statement filed herein and finding the same upon the evidence submitted to me to be incorrect and not complete and having examined the said above mentioned statement of corrected facts presented to me as a part of said motion, the same upon due examination by me and upon the evidence submitted to me I find to be correct and hereby approve the same as a correct statement of the facts in the said case and order the same filed as a part of the record in this cause by the clerk of this court and a certified copy thereof sent to the Court of Civil Appeals at Galveston, Texas. Done in open court this 27th day of October, A. D. 1905."

The above was done after the time allowed in which to prepare and file a statement of facts.

There is no authority for amending a statement of facts after the time limited. (Trinity & Sabine Ry. v. Lane, 79 Texas, 647.)

The trial court has undoubtedly power to annul its approval of a statement of facts, where the approval was obtained through fraud or other improper conduct. (Corralitos Co. v. Mackay, 72 S. W. Rep., 624.)

The proceeding here was not of this nature. The court had no power

after the time prescribed by law to approve and make a part of the record a statement of facts to amend or supersede one certified and filed within the time. Therefore, we can consider only the original statement.

Appellant contends that the evidence did not warrant the finding that the Dorsey under whom defendants claim was the original grantee, nor that the Dorsey under whom the plaintiffs claim was not. Of course as appellants were plaintiffs it devolved on them to show that the Dorsey under whom they claimed was the same person as the original grantee. A sufficient showing of this *prima faciae* would be the fact of the identity of name of their ancestor with that of the grantee. The question at issue was the identity of the grantee of the land with the Dorsey on plaintiffs' side or the Dorsey on defendants' side. The contention of appellant amounts to this, that the evidence did not warrant any finding except that plaintiffs' ancestor was the grantee of the land, and that the verdict founded upon the opposite theory should not be allowed to stand. This necessitates a review of the testimony.

The scrip or certificates numbered 261 to 268 were sold by Thomas Toby to Greenberry Dorsey at New Orleans on November 18, 1837. This Greenberry Dorsey, according to evidence in the case, lived in New Orleans from 1812 to 1869. Among his effects were various documents. A certificate of the marriage of Greenbury Dorsey to Elizabeth Hearne Packwood dated September 14, 1824, in New York. Also a deed dated November 3, 1837, made at Cincinnati, Ohio, to "Greenbury Dorsey of New Orleans" for certain land in Cincinnati. Also a letter dated October 11, 1843, addressed to Greenbury Dorsey, collector of the port, New Orleans, Louisiana. Also a letter from John Slidell dated November 13, 1843, directed to Greenbury Dorsey, collector, etc., New Orleans. Also the appointment of Greenberry Dorsey as receiver of public money, etc., at New Orleans, Louisiana, dated March, 1843, signed John Tyler, President of the United States. Also a power of attorney by Alice W. Redman to Greenberry Dorsey, her father, dated May 6, 1863, executed at New Orleans, Louisiana, reciting that both parties were of that city. Also a circular letter dated New Orleans, April 2, 1834, by which a firm of Dorsey & Creighton announced a co-partnership for doing "a western commission business," to which is signed in print the name "G. Dorsey." Also a letter of December 19, 1820, notifying Mr. Dorsey of his appointment as a director of a bank. This is addressed to "G. Dorsey." Pinned to this is a newspaper clipping announcing the death of Greenberry Dorsey at the age of 82 years, reciting that he was born in Baltimore, but had resided in New Orleans for the last 59 years. This clipping bore the date December 24, 1869. Also a letter dated July 18, 1820, notifying Mr. Dorsey of his appointment as director, addressed to Greenberry Dorsey. Also a letter dated January 4, 1817, signed Joseph Saul notifying Mr. Dorsey of his appointment as director of the office of discount and deposit of the Bank of the United States, addressed to G. Dorsey. Also a certificate of Grand Lodge of Ancient York Masons, dated May 1, 1811, signed in margin "G. Dorsey." In the body of the instrument the name is given Greenberry Dorsey."

It appears that in a deed to one of the 320 surveys located by virtue of this Toby scrip, to Alice W. Redman, dated August 11, 1868, the

grantor was named as Greenbury Dorsey of New Orleans, Louisiana, and was signed "G. Dorsey." This deed recited "being the same tract of land patented to said Greenberry Dorsey by patent dated the 11th day of April, A. D. 1854," which was the date of the patent.

The original scrip was lost. The record of the land office shows that on April 30, 1853, an affidavit was made by Greenberry Dorsey at New Orleans, that he was the owner of these eight pieces of land script numbers 261 to 268 inclusive, and that he had never sold, alienated or transferred same, etc., and that it has been lost, etc. This affidavit is signed "G. Dorsey."

The loss of the certificates was advertised, the advertisement being signed by Henry Austin, attorney for Greenbury Dorsey, and published in the Galveston News in 1850.

The patents were issued in 1854 and 1855 by virtue of duplicate Toby scrip numbered respectively as set forth in the patents.

Among the papers of plaintiffs' ancestor was found a letter dated Galveston, Texas, March 10, 1859, addressed to Greenberry Dorsey, Esq., New Orleans, Louisiana, signed Edward T. Austin, which states: "I will proceed to show you that the delay you have experienced in getting title to your land has been partly owing to Franklin's neglect to bring suit in 1855. I believe you opened a correspondence with my father about this land claim in 1847 or 1848. Your script and field notes were then lost. The law authorizing the issuance of duplicate script was repealed in 1846 and was re-enacted in 1853. Nothing could be done in the matter until duplicates could be obtained. When the law authorizing duplicate script was passed in 1853, at my brother's request I wrote a letter of instructions how to proceed under the new law and advised him to employ some one at Austin to attend to the matter. . . . He employed Thomas H. Duval of Austin, who procured the patents for which he was paid $50. Upon receipt of the patents they were delivered to Judge Franklin, who ranks as one of the best land lawyers in the State, to eject the parties who claimed under the patented tax sale in 1850. I believe Franklin was employed with your consent. In 1855, in making out my tax list I found a memorandum of your claim, and Henry being absent, I returned your land for tax, and when I paid the tax notified you that I had done so, but not hearing from you, and not wishing to pay taxes for nothing, I paid no further attention to the matter. In the beginning of 1857 I asked Franklin how he was getting along with your suit, and then learned that no suit had been brought. I then notified Henry that the statute of five years would have run by July, 1857. . . . On the trial Daniel's attorney produced a certificate from the Comptroller that Daniels had paid taxes since 1853. The judge charged the jury that the land was public domain until the field notes were returned to the Land Office. This was March, 1854. That by the patent the right of the State was vested in you April, 1854. Suit was filed April 7, 1858. . . . (Signed)    Edward T. Austin."

A witness, Forsyth, appears to have paid taxes on the tract conveyed by the above Dorsey to Alice W. Redman, his daughter. He testified that after said conveyance, her husband, Charles L. Redman, went to Texas and put squatters off the lands and put in possession some one to look after them. This witness testified also that the Greenbury Dorsey, the

father of Mrs. Redman, often spoke to him about several tracts of land in Hardin and other counties and at one time wanted him to go and live on them and care for them.

A witness, Simpson, testified he had lived in Hardin County many years, and prior to fifteen years ago lived near the Greenbury Dorsey lands with which he was well acquainted. That about 1871, one Redman came from Kentucky and stopped one Mitchell from cutting timber off said lands. Mitchell claimed to have bought some of said Dorsey land by tax title and he and witness were cutting the timber when Redman came and stopped them. An arrangement was made with Redman by which Mitchell and witness were to go on cutting until enough timber was cut to pay Mitchell the taxes he had paid.

A deed was shown from Mitchell to Alice H. Redman dated June 5, 1871, and recorded, conveying all of Mitchell's right, title, interest and claim in and to the surveys numbers 1, 2 and 3 and part of number 6 of these Greenbury Dorsey lands. The deed recites that the lands conveyed were bought by Allen Brackin at tax sale in 1850 and by mesne conveyance to Mitchell. The consideration being $75 paid in timber to be cut by Mitchell from said land.

In 1858 a suit was filed in the District Court of the United States at Galveston styled Greenberry Dorsey v. Estridge Daniels. Plaintiffs were represented by Edward T. Austin and judgment was against him. This suit affected part of the land in controversy, namely, the part which the court charged the jury to find for the defendant Whitaker.

The family bible connected with the family of plaintiffs' ancestor contained these entries: "I Greenberry Dorsey in the 75 year of his age gives this his family bible, to my beloved daughter Frances Hollis Neville, wife of Julian Neville to be by her disposed, at her option to other members of my family. New Orleans, 25 December, 1862," signed "G. Dorsey."

"Greenberry Dorsey (son of Greenberry Dorsey and Frances Hollis of Maryland) and Emily Packwood (daughter of Samuel Packwood and Alice Packwood of New London, Con.) were married in New Orleans on the 10th day of February in the year one thousand eight hundred and sixteen," signed, "G. Dorsey."

The evidence showed the heirship of plaintiffs from and under said Dorsey.

The spelling of the name Greenberry or Greenbury is given above as it occurs in the papers connected with the evidence affecting the New Orleans Dorsey. Not only is it apparent that these names refer to one and the same Dorsey and were used interchangeably to designate him, but it is apparent also that his customary way of signing his name was "G. Dorsey," which circumstance tends strongly to identify him as the same person, the person who in 1853 made the affidavit of loss of the certificate to obtain duplicates signing same "G. Dorsey." Other circumstances tend to show that it was this Dorsey to whom Toby sold the script, for the sale was made at New Orleans in 1835 where the former lived from 1812 to the time of his death in 1869. The fact that he had the Austins representing him in the procuring of patents to these lands and in prosecuting a suit for part of the land, in the fifties, as the letter of Edward T. Austin showed, also tends strongly to show his identity

with the person interested. Other of this testimony went to show that the ancestors of plaintiffs, the New Orleans Dorsey, was a man of affairs and of prominence and means in that city, and at or about the time of the transfer from Toby of the scrip was engaged in the "Western Commission Business," thereby placing him in a position both as to means and opportunity to become a purchaser of the scrip. There was other evidence, indicated above, in the transaction he had with his daughter in 1868 by which he conveyed her one of the tracts, reciting that it had been patented to him, also in what he said to persons at the time, that tended to identify him with the person to whom the lands had been patented.

The above is sufficient to show not only identity of name, but presents to say the least, a very strong array of facts and circumstances tending to establish the fact that this Dorsey of New Orleans, the ancestor of plaintiffs, was the person to whom Toby sold the scrip and to whom the land was granted.

The evidence relied on to raise the issue of identity of the person to whom Toby sold the scrip and to whom the lands were patented with the Dorsey under whom defendants claimed, and thereby, as against the foregoing facts and circumstances, to raise a probability that such person, instead of the New Orleans Dorsey, was the real grantee, is substantially as follows:

A Greenbury Dorsey stated by one of his descendants to have borne the name of Greenberry Hamilton Dorsey died without having been married, at Lagrange, Missouri, in 1863 or 1864. His age was not shown. He was at one time engaged in business at New Albany and then moved to Louisville, Ky., and engaged in business there for a number of years, and afterwards went into trading in Southern waters and more particularly on Red River. This business he followed until the war caused suspension of it. This Greenberry Dorsey appears to have made trips to Texas before the war engaged in trading with planters and others. One witness, James H. Dorsey, testified that he remembered a visit this Dorsey made to his father's house in Covington, Ky., that he on that occasion spoke a great deal of the possibilities of Texas and wanted witness's father to go there. He gave witness's father a bundle of papers to lands in Texas and offered to give his father the lands if he would move there. On another visit witness's father having concluded not to go to Texas, the papers were returned to him. This witness also testified that he and his family had been conversing and corresponding about the matter of getting their respective interests as heirs of this Uncle Greenberry in different States for about ten years. Another witness, William T. Dorsey, testified to this transaction also and said that he frequently heard this Greenberry Dorsey speak of trading in Texas and that he had bought lands there. Witness could not say what lands, but he spoke of having purchased a "Spanish claim." There was no evidence that this Greenberry Hamilton Dorsey was ever in New Orleans. Nor does any evidence indicate for how long before the war he was engaged in business in lower rivers, and therefore, it could not be said to be shown that he was so engaged in 1835. Nor was there anything to indicate how old he was in 1835.

Not until 1889 did the heirs of this Greenberry Dorsey appear upon

the scene as claimants to this land. He himself never did. It appears that after Redman's visit to Hardin County, in 1871, no attention was given these lands by either family until 1889 when the heirs of the last named Dorsey league began to institute proceedings in Hardin County against persons who had acquired claims to the land by virtue of tax sales by the collector of taxes for 1874. From that time on until this action was instituted, they were asserting claim to the lands and their title as well as the tax titles finally became vested in appellees. The record does not disclose the date of the commencement of this action, but the indication is that it was filed about 1901.

This is substantially the state of the evidence with regard to the issue of identity. The proof relied on to show the identity of Granberry H. Dorsey as the person to whom Toby sold the scrip and to whom the lands were granted, fails to show that he was ever in New Orleans where the transfer of the scrip was executed by Toby, fails to show that at the time of the transfer in 1835 he was engaged in business that carried him to Southern waters, and fails to show that at that time he was old enough to be engaged in business. The witness, Mrs. Schrodt, who was 80 years old when she testified in this cause and about 14 years old in 1835, testified that Granberry H. Dorsey was first in business in New Albany, and then moved to Louisville and another witness locates him in business in Southern waters after moving to Louisville and doing business there a number of years. This witness was 70 years of age when he gave his depositions and about 4 years old in 1835. The witness James H. Dorsey was 65 years old when he gave his deposition and was born in or about 1835. As these witnesses testified presumably of their personal knowledge, it would hardly be reasonable for their testimony to be taken as meaning that the Dorsey they referred to was engaged in trafficking in Southern waters as far back as 1835. Their testimony insofar as it showed what the land was he claimed to be interested in in Texas showed that it consisted of a Spanish grant. There were no acts on his part indicating any connection with these lands.

We are forced to the conclusion that if the jury found on the issue of which of these men was the real grantee, that the latter was the one, the finding is not supported by sufficient evidence and is against the great weight of the evidence.

If they based their verdict upon the finding that the evidence failed to show that plaintiffs' ancestor was the one, or, if he was the one, that plaintiffs failed to connect themselves with him as heirs, then we are of opinion that the verdict is clearly against the evidence. The testimony was through depositions, and we perceive no facts or circumstances entitling it to be disregarded for want of credibility.

Appellee urges the application as a matter of law of the rule announced in Fletcher v. Fuller, 120 U. S., 534. The facts of this case do not bring it within the scope of such rule. There have been no such acts of assertion of ownership on the one hand and such nonclaim on the other, and for such length of time, as would admit of a presumption either of law or of fact that title had passed in some way from the owner, into those exercising the acts of ownership. (United States v. Chaves, 159 U. S., 453.) The acts and conduct of the respective parties as shown in this record, and the circumstances connected therewith, as-

suming the title to have been in plaintiffs' ancestor, do not in our opinion afford sufficient circumstantial proof to warrant a jury in finding that the title had passed in some manner out of him into appellees or the Dorsey under whom they deraign title. We may add that the doctrine of Fletcher v. Fuller, insofar as it recognizes a presumption of such a conveyance as a presumption of law is not admitted in this State. (Herndon v. Vick, 89 Texas, 475.)

*Reversed and remanded.*