WARD et al. v. BAKER et ux.†

(Court of Civil Appeals of Texas. Feb. 1, 1911.
On Motion for Rehearing, March 22, 1911.)

1. DEEDS (§ 17*)—CONSIDERATION—PAYMENT OF LIEN OF THIRD PERSON.
    Where land is subject to certain liens, a deed made in pursuance of an agreement that certain of the purchase-money notes shall be indorsed to the lienholders who shall thereupon cancel their liens is based on a sufficient consideration.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 26–37; Dec. Dig. § 17.*]

2. TRIAL (§ 251*)—INSTRUCTIONS—MATTERS NOT IN ISSUE.
    Where there was no issue made by the pleadings as to the lack of knowledge on the part of a wife as to the contents of a deed acknowledged by her, nor that the deed was not fully explained to her by the notary, and it was admitted that she and her husband executed and acknowledged a good and sufficient warranty deed, it was error for the court to charge on the duty of officers taking the acknowledgment of married women that if the notary public failed, through negligence, ignorance, or any other reason to fully explain to her the true consideration, and made other false and incorrect statements to her, they should find for the plaintiff.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

3. ACKNOWLEDGMENT (§ 59*) — EVIDENCE (§ 83*)—PRESUMPTIONS—ACTS OF OFFICERS.
    The acknowledgment of a married woman being in statutory form, the law will presume that the officer performed his duty, and that the certificate of acknowledgment is true in all its details.
    [Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. § 320; Dec. Dig. § 59;* Evidence, Cent. Dig. § 105; Dec. Dig. § 83.*]

4. ACKNOWLEDGMENT (§ 25*)—MARRIED WOMAN—SEPARATE EXAMINATION.
    Rev. St. 1895, art. 4618, providing that no acknowledgment of a married woman shall be taken unless she has the same shown to her, and then and there fully explained by the officer taking the acknowledgment, on examination apart from her husband, is satisfied by full explanation of the instrument being executed, and does not require the officer to make a full investigation of the facts and circumstances attending its execution.
    [Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 136–141; Dec. Dig. § 25.*]

5. ACKNOWLEDGMENT (§ 25*)—ACKNOWLEDGMENT BY MARRIED WOMAN—EXAMINATION BY OFFICER.
    While it is ordinarily sufficient for an officer taking the acknowledgment of a married woman to explain to her the instrument which he is called upon to execute, if the officer has knowledge of any fraud about to be perpetrated on the wife in connection with the instrument, it is his duty to divulge the same to her.
    [Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 136–141; Dec. Dig. § 25.*]

6. HOMESTEAD (§ 60*)—WHAT CONSTITUTES.
    Where a divorced woman acquired hotel property by exchanging other land therefor, and lived in the hotel, which was rented to another person, but her children resided in another county, and, on borrowing money, gave a lien on the hotel property to secure the same, designating other property as her homestead, the hotel property could not be considered her homestead.
    [Ed. Note.—For other cases, see Homestead, Cent. Dig. § 88; Dec. Dig. § 60.*]

7. HOMESTEAD (§ 177*) — DECLARATIONS OF PARTIES—ESTOPPEL.
    Where property has actually become a homestead, mere declarations of the owner and her husband negativing the idea of homestead made while they were occupying the property as a homestead, does not change its homestead character, and no estoppel arises from such declarations.
    [Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 344–347; Dec. Dig. § 177.*]

8. HOMESTEAD (§ 154*)—ABANDONMENT—INTENTION.
    That the owners of a homestead entertain an intention to sell the same and acquire another homestead does not deprive it of its homestead character, where they actually occupy it as such.
    [Ed. Note.—For other cases, see Homestead, Cent. Dig. § 307; Dec. Dig. § 154.*]

9. HOMESTEAD (§ 29*)—ACQUISITION—CHOICE OF HUSBAND.
    The husband may choose and establish the homestead, regardless of the wishes of the wife.
    [Ed. Note.—For other cases, see Homestead, Cent. Dig. § 37; Dec. Dig. § 29.*]

10. DEEDS (§ 70*)—FRAUD—AVOIDANCE.
    If an attorney was the agent of lienholders and fraudulently represented to a married woman that he could and would foreclose claims for improvements on her homestead, which had not become a lien thereon by compliance with Rev. St. art. 3304, relating to mechanics' liens, and she was thereby induced or coerced into executing the deed and conveying the property to him, to secure such lien claims in the belief that such representations were true, such conveyance was voidable.
    [Ed. Note.—For other cases, see Deeds, Dec. Dig. § 70.*]

11. DEEDS (§ 71*)—SETTING ASIDE—"DURESS."
    To constitute duress avoiding a deed, there must either be imprisonment or threats thereof, or of personal violence; the mere fear of losing property by foreclosure of a lien not being sufficient.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 183–189; Dec. Dig. § 71.*
    For other definitions, see Words and Phrases, vol. 3, pp. 2268–2278; vol. 8, p. 7645.]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error dismissed April 19, 1911.

**12. EQUITY (§ 11\*)—FRAUD—TAKING ADVANTAGE OF ANOTHER'S IGNORANCE.**

While the law is presumed to be equally within the knowledge of all parties, yet, if a man dealing with another takes advantage of his ignorance of his legal position and rights, a court of equity will exercise its powers to prevent imposition, and a misrepresentation as to the legal effect of an instrument may be fraud.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 21; Dec. Dig. § 11.\*]

On Motion for Rehearing.

**13. APPEAL AND ERROR (§ 643\*)—RECORD—CORRECTIONS.**

A clerical mistake in copying documentary evidence into the record on appeal may be corrected by leave of the trial court after transmission of the record to the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2791; Dec. Dig. § 643.\*]

Appeal from District Court, Uvalde County; R. H. Burney, Judge.

Action by Thomas Baker and another against E. B. Ward, First State Bank, and others. From a judgment for plaintiffs, defendants appeal. Affirmed as to the First State Bank, and reversed and remanded as to other defendants.

G. B. Fenley, Claude Laurence, Geo. Powell, and Teagarden & Teagarden, for appellants. Martin, Old & Martin, for appellees.

FLY, J. This suit was instituted by defendants in error, who for convenience will be denominated plaintiffs, against E. B. Ward, Mrs. Lou Bourke, George Powell, and the Wilson Lumber Company, to cancel a certain deed executed by plaintiffs to E. B. Ward, conveying lots 9 and 10, block 16, in the town of Sabinal, Uvalde county, Tex., and to cancel certain deeds of trust on said property, given to Mrs. Lou Bourke, George Powell being the trustee, and to cancel certain materialmen's liens on the property and a certain deed of trust; E. B. Ward being the trustee. The First State Bank was also sued by plaintiffs, because it had in its possession certain notes. The Wilson Lumber Company was dismissed from the suit, and the Hillyer, Deutsch, Jarratt Company intervened, alleging that it was the owner of the liens and notes given to the Wilson Lumber Company. Powell, who is sued as a trustee, Mrs. Bourke, E. B. Ward, and the intervener are the plaintiffs in error, but, to prevent confusion, will be spoken of as defendants, the position they occupied in the trial court. The grounds upon which the cancellation of the deed was sought were that it was obtained by fraud, threats, and misrepresentations upon the part of Ward, and on account of a partial failure of consideration. The liens were sought to be canceled on the ground that the property was the homestead of plaintiffs when they were executed. The cause was tried by jury and a verdict returned canceling the deed made by plaintiffs to Ward, and the different deeds of trust, except the first, and in favor of the lienholders for their respective debts, and for foreclosure of the first lien given to secure a debt of $500, and in favor of the First State Bank. The judgment was rendered in conformity to the verdict. This appeal is prosecuted by E. B. Ward, Mrs. Bourke, and Hillyer, Deutsch, Jarratt Company. No complaint is made of the judgment in favor of the First State Bank.

It was alleged in the answer of the defendants that the property in controversy was sold to E. B. Ward for $5,500, evidenced by four promissory notes, one for $2,000 to be held by the plaintiffs, two for $1,500 each, one to be indorsed by plaintiffs to Mrs. Lou Bourke and the other to Hillyer, Deutsch, Jarratt Company to secure those parties in debts due them by plaintiffs, and a fourth note for $500, which was to be sold and the proceeds divided so as to allow plaintiffs $125, Mrs. Bourke $125, and the Hillyer, Deutsch, Jarratt Company $250; that the sale was consummated, the notes were executed, and the deed delivered, and the notes indorsed as provided and liens held by the indorsees were canceled, and that the $2,000 was delivered to plaintiffs, and $125 in cash tendered to them. There was testimony tending to support those allegations, and yet the court failed in the general charge to submit that theory of the case to the jury, and, in fact, presented no phase of the case upon which a verdict could be returned in favor of the defendants. Not only was the whole of the court's charge devoted exclusively to phases of the case presented by the pleadings and evidence of the plaintiffs, but, in addition, two special charges requested by plaintiffs, which presented their side of the case, were given by the court. Under that state of circumstances, the court was requested by defendants to give a charge presenting defendants' side of the case. The charge should have been given. There is no strength in the contention that it was defective in not presenting therein the claim of failure of consideration as pleaded by plaintiffs. If defendants proved the matters pleaded by them and presented in the requested charge, there was no failure of consideration. If the facts pleaded were true, there was a sufficient consideration for the conveyance of the land, and the charge bases recovery on proof that Mrs. Baker knew and understood the consideration.

There was no issue made by the pleadings as to the lack of knowledge upon the part of Mrs. Baker as to the contents of the deed, nor was it alleged that the deed was not fully explained to her by the notary public, but it was admitted that the plaintiffs did "execute and acknowledge a

good and sufficient warranty deed." The court, however, elaborately charged the jury on the duty of officers taking the acknowledgments of married women and instructed a verdict for plaintiffs' if the notary public "failed, through negligence, ignorance or any other reason, to fully explain to her the true consideration," and made other false and incorrect statements to her. If the charge had embodied the law on the subject, it was erroneous to give it because not justified by the pleadings. But, if the pleadings had been full upon the issue as presented, the charge should not have been given, because it did not appear that Ward knew of the officer's fraud or negligence. The acknowledgment of the married woman being in statutory form, the law would presume that the officer performed his duty, and that the certificate of acknowledgment is true in all its details, and absolute verity would be accorded the statements contained therein, and, however fraudulent or negligent the conduct of the notary public may have been, it would not invalidate the deed in the absence of evidence connecting the defendants, or their agents, in any manner with the deception, fraud, or negligence of the officer. In the absence of such evidence, the certificate of the officer is conclusive of the facts therein stated. Hartley v. Frosh, 6 Tex. 208, 55 Am. Dec. 772; Shelby v. Burtis, 18 Tex. 645; Pool v. Chase, 46 Tex. 207; Williams v. Pouns, 48 Tex. 142; Kocourek v. Marak, 54 Tex. 201, 33 Am. Rep. 623; Waltee v. Weaver, 57 Tex. 569; Davis v. Kennedy, 58 Tex. 516; Moore v. Moore, 59 Tex. 54; Pierce v. Fort, 60 Tex. 469; Miller v. Yturria, 69 Tex. 549, 7 S. W. 206; Webb v. Burney, 70 Tex. 322, 7 S. W. 841; Coker v. Roberts, 71 Tex. 597, 9 S. W. 665; Wheelock v. Cavitt, 91 Tex. 679, 45 S. W. 796, 66 Am. St. Rep. 920. The evidence tended to show that Mrs. Baker was fully acquainted with the recitals in the deed and the terms of the notes, but under the instruction the deed would be invalidated, if not fully explained by the officer, although she had full knowledge of it from other sources. That proposition could not be sustained, for the reason that the failure to explain could not invalidate the deed unless a fraud was perpetrated upon Mrs. Baker, and a fraud could not be perpetrated if she knew all that could have been told her by the officer. That part of the charge in relation to fraud of the notary public in informing Mrs. Baker that the note for $2,000 bore interest at 8 per cent. had no basis in the facts. The notary public had fully performed his duty if he honestly explained the deed and notes according to their face, tenor, and effect. It was not his duty, in the absence of proof that he knew that the instruments did not express the true contract between the parties, to attempt any further explanation. He sought to remedy the only objection interposed by talking to Ward in regard to the interest, and stating to Mrs. Baker what Ward said. The officer could not have communicated to her any more than he did if he had ransacked every possible nook or corner for evidence, and his acts would meet the requirements of Blume v. White, 111 S. W. 1066, which makes the duty imposed upon officers in taking acknowledgments more onerous than any authority that has come under our notice. The statute (Rev. St. 1895, art. 4618) would seem to be fully satisfied with a full explanation of any conveyance, or other instrument purporting to be executed by a married woman, and does not enjoin upon the officer the duty of a full investigation of the facts and circumstances attending the execution of every instrument to be acknowledged by a married woman.

In the case of Cole v. Bammel, 62 Tex. 108, cited in Blume v. White, the Supreme Court, after stating that the statute exercises a watchful care over the rights of married women, and that their conveyances must be executed in strict conformity to the statute, says: "Reposing confidence in certain officers named for that purpose, it requires that one of them shall examine the wife privily and apart from her husband, explain the contents of the deed to her, and take her acknowledgment to the effect that she freely and voluntarily executed the deed, and wished not to retract it." The officer under that ruling was not required to do anything but "explain the contents of the deed to her." The other case cited in Blume v. White is Stallings v. Hullum, 79 Tex. 421, 15 S. W. 677, in which there is no intimation that the officer should do more than explain the contents of the deed. It may be the case that if it be shown that an officer is in possession of facts that tend to convince him that a fraud is being attempted upon the rights of a married woman, and that the contents of the instrument do not express the true terms of the contract, it would be incumbent upon the officer to inform her of the facts within his knowledge, and we incline to the belief that such must have been the status of affairs in the case under discussion. We infer that from the fact that the jury in the trial court in a question asked the judge seemed to assume that the notary public was fully apprised of the fraud that was being perpetrated upon the married woman. If that be the case, the officer should not have become a party to the fraud by concealing the facts from the married woman that bore so directly upon the instrument she was executing. In the case at bar the evidence totally failed to show that the deed did not express the true contract of the parties, or that the notary public knew of any fraud being attempted. The charge on the subject was not justified by pleadings or evidence. The note for $2,000 under the recitals of the deed

and statements in the note would bear 8 per cent: interest.

The evidence shows that Mrs. Baker in 1904, at the time being divorced from her husband, Thomas Baker, traded a ranch owned by her for the property in controversy, which consists of lots 9 and 10, block 16, in Sabinal, Uvalde county, Tex., on which is situated a hotel, which is a two-story building of 16 rooms. Her children were in San Antonio at that time, and she lived in the hotel, which was rented to Mrs. Cunningham at $35 a month. Mrs. Baker's children consisted of two sons and three daughters. According to her testimony, she never resided in San Antonio, but merely paid visits to her children. During one of those visits she borrowed $500 from Mrs. Bourke, and gave a lien on the Sabinal property to secure it, designating by her affidavit property in Shiner, Tex., as her homestead. Under the testimony of Mrs. Baker the property was not her homestead at that time, because it had been rented from the time she bought it, and had never been impressed with the homestead character. In October, 1906, Mrs. Baker was again married to Thomas Baker, from whom she had been divorced, and on December 22, 1906, she and her husband executed a promissory note to Lou Bourke for $1,000, and to secure it executed a deed of trust of same date on lots 9 and 10, block 16, in the town of Sabinal. They also executed on August 4, 1908, three notes for $564 each to the Wilson Lumber Company, and gave a deed of trust on the hotel property to secure them; Edward B. Ward being the trustee. The notes were on September 27, 1908, transferred to Hillyer, Deutsch, Jarratt Company as collateral security. At the time that all of the notes except the first for $500 and the deeds of trust were executed Baker and wife were living in the hotel and, according to their testimony, making it their home. They had never acquired any other home, and the declarations of the Bakers, verbal or written, made while they were occupying the hotel as a homestead, cannot change its homestead character, and no estoppel would arise in favor of a lender who has attempted to secure a lien thereon. Medlenka v. Downing, 59 Tex. 37; Mortgage Co. v. Norton, 71 Tex. 683, 10 S. W. 301; Pellat v. Decker, 72 Tex. 581, 10 S. W. 696; Kempner v. Comer, 73 Tex. 203, 11 S. W. 194; Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 12; Hines v. Nelson, 24 S. W. 541. If the Bakers had made the hotel their homestead, which the evidence seems to indicate, no intention to sell it and acquire another could strip the home, actually occupied, of its homestead rights. Mrs. Baker may have stated that she had moved on the property for the purpose of selling it, still, if it was her homestead, her intention to sell it would not affect its status. McDannell v. Ragsdale, 71 Tex. 23, 8 S. W. 625, 10 Am. St. Rep.

729. If she expressed such intention before she went on the place, the facts go to show that she changed her mind and made the place her home before she gave the mortgages. No other homestead had been acquired, and this was actually occupied, and declarations and intention to abandon cannot divest them of their right to the one they occupied. Ruhl v. Kauffman, 65 Tex. 723. The husband chooses and establishes the homestead, and, when he so designates it, the homestead character attaches thereto, regardless of the wishes of the wife, and it seems that the husband in this instance had designated the hotel as the homestead. The views expressed in regard to the homestead become important only in case it be decided that the deed to the homestead is invalid by reason of fraud in its procurement. If there was no fraud exercised in procuring the deed, there was a valid consideration for it in the extinguishment of the debts which plaintiffs owed to different parties, and which good conscience and honest dealing with their creditors would cause them to pay.

The cancellation of their debts and the surrender of their deeds of trust by the lienholders would in a case of this class be such a valuable consideration as to place parties holding the liens in the attitude of innocent purchasers, and no fraud perpetrated by the notary public or by Ward unless he was their agent could invalidate the deed as to them. The rule that a precedent debt would not be considered a valuable consideration so as to make one an innocent purchaser as against a prior unrecorded deed would not apply in cases of this character where the dealings affect only parties to the contract. It is a valuable right between them and when they contract as to the discharge of a debt as a consideration for property conveyed, it is a good and valuable consideration; there being no question of inadequacy of price. Webb v. Burney, 70 Tex. 322, 7 S. W. 841; Hickman v. Hoffman, 11 Tex. Civ. App. 605, 33 S. W. 257; Harrington v. McFarland, 1 Tex. Civ. App. 289, 21 S. W. 116. If Ward was the agent of the lienholders and fraudulently represented to Mrs. Baker that he could and would foreclose invalid liens upon property which the facts showed to be her homestead, and she was thereby induced or coerced into executing the deed and conveying the property in Sabinal to him, the conveyance would be voidable and could be set aside by the plaintiffs. Ward, being an attorney at law, would be charged with the knowledge that the liens were invalid as against a homestead, and his representations as to their validity would be a fraud, and, if relied and acted upon by plaintiffs, would invalidate the conveyance of the land. The facts show conclusively that the property was the homestead of plaintiffs when the liens were given on it in favor of the lumbermen and

workmen who repaired the place. None of the notes given for material and work were secured as required by article 3304, Rev. St. 1895. Under the facts, the court did not err in assuming that the property was the homestead of plaintiffs, when all the liens except the first were created and when the deed was executed. All the misrepresentations and false declarations made by Mrs. Baker could not control or destroy the fact that plaintiffs with their family were in possession of the property, and had no other homestead. Those facts were uncontradicted. If, as the facts indicate, the hotel was made the homestead after their remarriage in October, 1906, the declarations of Mrs. Baker prior to that time, whether verbal or written, as to her homestead being in Shiner, could not affect the homestead character given to the Sabinal property by plaintiffs after their remarriage. It follows that such declarations were not pertinent, except in so far as they affected the lien for $500, which was given by her while she was a feme sole and prior to the time the property was occupied as a homestead.

To constitute duress so as to set aside a deed therefor, there must either be imprisonment or threats of imprisonment or of personal violence. The fear of losing property is not duress, and duress could not figure in this case, because no threats were made except to foreclose a lien on property. Walker v. McNeils, Dallam, Dig. 541; Landa v. Obert, 72 Tex. 33, 14 S. W. 297. But if Ward stated to Mrs. Baker that the lienholders could and would foreclose their liens on her homestead, knowing that such liens could not be foreclosed and Mrs. Baker believed such representations to be true, and was induced by such representations to execute the deed to Ward, and he was the agent of the lienholders, such representations might constitute such fraud as would invalidate the deed. While the law is presumed to be equally within the knowledge of all parties, yet, if a man dealing with another takes advantage of his ignorance of his legal position and rights, a court of equity will exercise its powers to prevent imposition. A misrepresentation as to the legal effect of an instrument may be fraud. Moreland v. Atchison, 19 Tex. 309; Ramey v. Allison, 64 Tex. 697.

We have endeavored to consider and discuss all points that may arise on another trial, and the judgment will be affirmed as to the First State Bank, and for the errors indicated the judgment is reversed and the cause remanded as to the other parties.

### On Motion for Rehearing.

Appellees are very strenuous in their contention that Mrs. Baker signed a deed that was not the one she intended to sign, in that it fails to provide for semiannual payments of interest. The notary public testified that he fully explained the terms of the deed to her after reading it over to her, that he called her attention to all the conditions with reference to payments. He stated that, when he reached the part in regard to interest, she objected to it because it should have provided that interest be paid semiannually, instead of annually, and refused to sign until the matter was fixed. The officer then called Ward, told him about the objections, and he said he would give her a written agreement outside the deed to pay the interest semiannually to avoid rewriting the papers. The notary public then asked Mrs. Baker to converse with Ward over the telephone, which she did, and seemed satisfied, and then signed the deed. Afterwards Ward gave the notary public the written agreement to pay the interest semiannually, and it was placed with the notes and deed, and they were deposited in the First State Bank, as Mrs. Baker had directed, and they remained there a week or ten days. The cashier testified that Mrs. Baker and Ward came together for the papers, and, after they had arranged everything as to interest and other matters amicably, the papers were delivered to them, Ward getting the deed and three notes and Mrs. Baker the note for $12,000. Thomas Baker then indorsed the notes. It appeared from a memorandum that one of the notes was indorsed to Powell, and two to Landry, and that out of the $500 note indorsed to Landry he was to pay Powell $125 and Mrs. Baker $125.

Mrs. Baker admitted that Ward agreed to make it all right in regard to interest, and that she signed the deed with full knowledge that semiannual interest was not mentioned in it. She was not deceived about it, and does not claim that any one represented that semiannual interest was provided for in the deed. She afterwards saw the notes and indorsed them. She knew fully the contents of each one of them. The notary public was the witness for appellees, and he showed conclusively that she fully understood the deed and all the matters connected with it, and that he fully explained everything to her. No decision of any court has ever required a broader explanation than was given by the notary public, because the explanation laid everything bare to her that the notary public could possibly have known. Mrs. Baker understood fully what she was signing.

The certificate of acknowledgment of Mrs. Baker to her deed to Ward is attacked for the first time in the motion for rehearing, on the ground that it does not state that she was examined privily and apart from her husband. Since this attack was made, appellants have applied for and obtained from the district judge who tried the cause an order correcting the record, in which it is recited that the certificate of acknowledgment was improperly copied from the orig-

inal deed which was in evidence, and that the certificate was in strict conformance to the statute. A certified copy of the certificate of acknowledgment was sent up to this court. In this case the statement of facts was made up by the trial judge, the parties having failed to agree, and evidently in copying the deed into the statement of facts the words, "and having been examined by me privily and apart from her husband," were omitted. No decision has gone to the extent of holding that the rights of a litigant could be destroyed. by such clerical omission, and that no one has the power to make the correction in the record. In the case of Dorsey v. Olive, 42 Tex. Civ. App. 568, 94 S. W. 413, there was an attempt to substitute an entirely different statement of facts in which additional facts were embodied which were not found in the original statement. This court held that it could not consider the last statement of facts, stating: "The court had no power, after the time prescribed by law, to approve and make a part of the record a statement of facts to amend or supersede one certified and filed within the time." Under the facts of that case, the decision was correct, but the principle would be oppressive and unreasonable if carried to the extent of holding that documentary evidence incorrectly copied into a statement of facts cannot be corrected. In the case of Railway v. Lane, 79 Tex. 643, 15 S. W. 477, 16 S. W. 18, a contract was altogether omitted from the record, and no effort was made to have it inserted in the record, and the court refused to consider a contract which was not in the record, and the court on rehearing held that application should have been made for a writ of mandamus to compel the trial judge to perfect the statement of facts.

The case of Boggess v. Harris, 90 Tex. 476, 39 S. W. 565, seems to be authority for the district judge to correct a clerical error in a statement of facts, and make it speak the truth. In that case it was alleged that certain things had been inserted in the statement of facts after it had been approved by the trial judge, and he was permitted to eliminate them. There was no question of fraud in that case. Appellee cannot in the face of the certificate of the trial judge claim that there was any defect in the form of the certificate, and should not be permitted to reap an advantage from a clerical omission in the record. There is no conflict whatever between this decision and former opinions of this court.

The real consideration of the deed was fully explained to Mrs. Baker, and even under the Blume v. White decision the explanation was full and complete. In that case the notary knowingly perpetrated a fraud. and White was present and knew of the fraud. Appellees in the case now at bar proved a full explanation, and that there was no fraud upon the part of the officer who took the acknowledgment.

There is nothing in our former opinion in conflict with the decisions in Kopke v. Votaw, 95 S. W. 15, and Stringfellow v. Braselton, 117 S. W. 204, except as hereinafter indicated. In those cases it was held that, no matter how well acquainted the married woman may be with the transaction involving the execution of the deed, the officer must explain the deed to her. In the first case the acknowledgment was defective in not stating that the deed was explained by the officer. That portion of our opinion in conflict with this is withdrawn as hereinafter indicated. In the last case cited it was held that the fraud of the notary could not be imputed to the vendee, unless the latter was cognizant of the fraud, and, further, that it was the duty of the officer to explain the deed to the married woman, even though she knew all about it. We find no case of Johnson v. Taylor, 60 Tex. 365, which is cited by appellees, but suppose reference is made to Johnson v. Taylor, 60 Tex. 360, which lends no aid or comfort to appellees' contentions, and the decision of this court in no wise conflicts with it. The other case cited by appellees as conflicting with our opinion herein is Langton v. Marshall, 59 Tex. 296, in which it is held: "By the statute the duty is imposed upon the officer to fully explain to the married woman the instrument which she is thus called upon to acknowledge. This contemplates that the officer will act in the matter as her adviser, and so explain to her the instrument that she may comprehend its true import and meaning." That decision fully sustains the decision of this court, except as to that part hereinafter eliminated. The case of Norton v. Davis, 83 Tex. 32, 18 S. W. 430, is in regard to acknowledgment defective in form, and the testimony offered to supply the defect showed that the instrument was not explained properly to the married woman.

That part of the original opinion herein which holds that although the officer had not fully explained the deed, if Mrs. Baker knew all about it from other sources, it would bind her, is in conflict with other decisions, as herein indicated, and is withdrawn. It was unnecessary to the decision of the case. With that exception we adhere to our former opinion.

The motions for rehearing and to certify and to strike out order are overruled.