| 19 | 303 |
| 74 | 218 |
| 19 | 308 |
| 89 | 124 |

## GEORGE W. MORELAND v. ROBERT ATCHISON.

It is clearly settled beyond controversy, that Chancery will decree a return of the purchase money for insufficiency of title, even after the purchase has been carried completely into execution, by delivery of the deed and payment of the money, and whether the deed was with or without covenants, provided there had been a fraudulent representation as to the title.

The law presumes that every man who makes a contract, acts with a knowledge of the law, and of the legal effects and consequences of the contract.

The question whether, in any case, *mere* ignorance or mistake of law will entitle a party to relief. has been much discussed by Judges and Commentators, and is still a disputed question.

The general rule, it has been truly said, is justified by considerations of public policy ; and yet so harsh a rule, founded upon a presumption so arbitrary, ought to be modified, in its application, by every exception which can be admitted without defeating its policy.

It has been the constant practice of Courts of Chancery to grant relief, where the case did not depend upon a mere mistake of law, stripped of all other circumstances, but upon an admixture of these ingredients, going to establish misrepresentation, imposition, undue confidence, undue influence, or advantage taken of another's situation.

There was, in this case, misrepresentation and fraud, if corruptly deceiving one, as to matter of law, amounts to fraud, in a legal sense ; and we do not doubt that it may, where, as in this case, advantage is taken of the ignorance of the party.

When one who has had superior means of information, professes a superior knowledge, even of the law, and thereby obtains an unconscientious advantage of another, who is confessedly ignorant and who has not been in a situation to be informed, the injured party is as much entitled to relief, on the ground of fraud, as if the misrepresentation were of a matter of fact. This principle is applicable to the case of an immigrant to the State, who, having just arrived, meets with an old citizen who professes familiarity with the land titles of the country, and proposes to sell him land to which he assures the immigrant he has a perfectly good title.

Whether a tract of land, claimed by pre-emption, is within a district of country reserved from the operation of the pre-emption laws, is a matter of fact, which a purchaser would not be presumed to know, under the rule which presumes a knowledge of the law.

Appeal from Grayson. Tried below before the Hon. William S. Todd.

Petition filed September 21st, 1855, as follows : The petition of George W. Morelamd, a resident of Grayson county, would represent and show that heretofore, to-wit : on the 30th day of October, A. D., 1854, he purchased of one Robert Atchison, who is also a resident of Grayson county, and who petitioner prays may be made a defendant to this petition, three hundred and twenty acres of land in Grayson county, and described as follows. [Here followed a description of the land by metes and bounds, fixing the beginning corner by course and distance from the S. E. corner of Thomas F. Hay's pre-emption survey.] Petition charges that on the 9th day of December, A. D., 1853, one Daniel Boon filed his application as a pre-emptioner with the County Surveyor of Grayson county to pre-empt the aforesaid land. Petitioner further charges that on the —— day of ———, A. D., 1854, and before your petitioner purchased the aforesaid land, of the said Robert Atchison, the said Atchison purchased the same of the said Daniel Boon, for and in consideration of the sum of three hundred and twenty dollars. Petitioner further charges, that said sale made by the said Boon, to the said Atchison, was never reduced to writing, and that after your petitioner had purchased the same as aforesaid of the said Atchison, he, the said Atchison, proposed, as there was no writing between him and the said Boon, that the said Boon should make a deed of conveyance to your petitioner directly, which would save the making of a deed from the said Boon to the said Atchison, and from him, the said Atchison, to your petitioner, and would also save the expenses of recording more than one deed, which your petitioner agreed to for convenience. Petitioner further charges, that in pursuance of the aforesaid agreement, and for the purpose of saving expenses and for convenience sake, the said Boon did, on the 30th day of October, 1854, execute to your petitioner a deed of conveyance for the aforesaid 320

acres of land. Petitioner charges as aforesaid that said deed was made directly from Boon to your petitioner, for the purpose aforesaid, and not for any consideration paid by petitioner to said Boon. Petitioner states that the entire trade was made between him and the said defendant, and that the entire consideration paid by petitioner for said land, was paid to the said Atchison, with whom he traded, and that he never made any contract with said Boon for said land, nor did he ever pay the said Boon any of the consideration for the said land ; and he further states that it was agreed, that said Boon should be substituted as the maker of said deed to your petitioner, in the place of said Atchison ; all of which the said Atchison proposed himself and agreed to ; which said deed, made by the said Boon as aforesaid, is hereto attached and made a part of this petition, and marked exhibit " A." Petitioner further states and charges, that at the time he made the aforesaid purchase of the said Atchison, he was a stranger in the country, and was an entire stranger to, and unacquainted with the land system of Texas, he being just moved into the State of Texas, and that the said Atchison represented himself as an old settler in Texas, and entirely familiar with the lands and with the laws governing land titles within Texas. Petitioner further charges, that said Atchison corruptly and fraudulently represented to your petitioner that he, the said Atchison, had a good title to the aforesaid 320 acres of land, and that your petitioner could hold the same without any molestation or hindrance, and that he would guarantee the title to the same.

Petitioner states that, believing and confiding in the representations and statements made by the said Atchison as aforesaid, and that his, the said Atchison's title to the said land was good, purchased the same as aforesaid, from the said Atchison, for which he paid the said Atchison one stallion Jack at seven hundred dollars ; also, one order from Boon on the said Atchison, one hundred dollars ; he also executed to

the said Atchison his two certain promissory notes for one hundred bushels of corn each, rating corn one dollar per bushel ; one of said notes is due in the Fall of the year, 1855; the other due in the Fall of the year, 1856; making in the whole your petitioner paid and was to pay for said land, one thousand dollars. Petitioner further charges that said Atchison did not have any title to said land, and that your petitioner acquired no title by his aforesaid purchase, and that at the time the said Boon made his application to pre-emption the same, it was not subject to be pre-empted, or located, because the 320 acres of land was lying in what was known and called Peters' Colony, and that by law, all persons were prevented from pre-empting or locating any lands in said colony, except by virtue of colony certificates. He therefore charges that the said Atchison had no title whatever to said land, when he sold the same to your petitioner. Petitioner therefore charges that he was wholly induced to purchase said land by the false and fraudulent representations made to him by the said Atchison, that the title to the same was good.

The premises considered, he brings this suit, and prays that said Atchison be made a defendant herein, and hereby tenders back the deed that the said Boon executed, to and all the rights he acquired by the same, to the said Atchison. And he also here offers to release unto the said Atchison all the interest that he may have acquired by his aforesaid purchase.

Petitioner also prays for judgment against the said Atchison for the sum of eight hundred dollars, which he has paid him, together with the interest thereon due. Also, the sum of five hundred dollars as damages, by reason of the fraud practised on him by the said Atchison.

Petitioner further prays that the said Atchison be compelled to surrender the two aforesaid notes executed by your petitioner to the said Atchison for corn, and that the same be cancelled, set aside, and held for nought. Petitioner further prays for citation against said defendant, and also for all relief

Moreland v. Atchison.

that may seem equitable and just in the premises, and the nature of his case demands, and as in duty bound petitioner will ever pray, &c.

Exhibit A was a deed of bargain and sale of all of Boon's right, title and interest in said land, "secured to me, the said "Daniel Boone, by an Act of the Legislature of the State of "Texas, granting to settlers on vacant public domain, pre-emp- "tion privileges, approved January 22d, 1845," with a covenant of special warranty against the claims of all persons claiming by, through or under him.

Defendant filed a general demurrer, and for special exceptions as follows :

1st. Plaintiff seeks to annul a sale of land for fraud in the vendor in representing his title to be good when he set out a deed in writing as a part of this petition, only quit-claiming to plaintiff.

2d. Plaintiff desires to annul a written contract and sale of land for want of a covenant of warrantee in the same, when he expressly declares that the deed was made to him by Boon instead of Atchison, by his consent, and for his own convenience.

3d. No matter what were the parol representations of defendant in regard to his title, the plaintiff has accepted the quit claim and is bound thereby.

Defendant also denied the fraud charged; claimed damages in reconvention on the ground of impotency of the Jack, and also claimed in reconvention a recovery on the note which had fallen due. The Court sustained the demurrer, and plaintiff declining to amend, the cause went to trial on the pleas in reconvention, (the plaintiff excepting,) and defendant obtained a verdict for the amount of the note ; judgment, &c.

*Evarts & Hendricks*, for appellant, cited Chit. on Cont. 278, 587 ; 2 Stark. Ev. 340 ; 1 Story Eq. Sec. 208 ; 2 Kent, Com. 471, (7th ed. ;) York v. Gregg, 9 Tex. R. 95.

*J. T. Mills*, for appellee, suggested delay.

WHEELER, J.   Whatever differences of opinion adjudged
cases may exhibit, as to the cases where the purchaser of land
will be entitled to have the contract rescinded, or to be re-
lieved against securities given for the purchase money, where
there is no charge of fraud, it is clearly settled beyond con-
troversy, that Chancery will decree a return of the purchase
money, for insufficiency of title, even after the purchase has
been carried completely into execution, by delivery of the
deed and payment of the money, and whether the deed was
with or without covenants, provided there had been a fraudu-
lent representation as to the title. (Edwards v. McLeary,
Cooper's Eq. R. 308 ; Fenton v. Browne, 14 Ves. 144 ; Den-
ston v. Morris, 2 Edwards' Ch. R. 37 ; 2 Kent, Com. 471.)
The petition avers such fraudulent representation ; and the
only question is, whether it was of a matter respecting which
the party can claim to be relieved, on the ground of the decep-
tion and fraud,—whether he was not bound to know the law,
which disabled the defendant from making title, and whether,
to grant him relief would not be to relieve against ignorance
or mistake of law.   The maxim *ignorantia legis neminem excu-
sat*, is respected equally in Courts of equity and law.   The
legal presumption is, that every man who is not *non compos
mentis*, knows the law, where he knows the facts ; and this
presumption, though arbitrary and false in fact, is founded
upon reasons of sound policy ; for although a thorough know-
ledge of the law presupposes a life devoted to the laborious
study of its principles, and in the application of the know-
ledge thus acquired, to the complicated affairs of men, there
will questions arise upon which the best informed will differ in
opinion, and no such thing as absolute certainty can be attained,
yet without some arbitrary rule, imposing upon all the duty of
well considering and understanding the consequences of their
acts and contracts, there would be no limit to the excuse of
ignorance, no safety to society, and no security in any obliga-
tion.   The law presumes therefore that every man who makes

a contract, acts advisedly and with a knowledge of its legal
effect and consequences. The question whether, in any case,
mere ignorance or mistake of law will entitle a party to relief,
has been much discussed by Judges and Commentators, and is
still a disputed question. (1 Story's Eq. Ch. 5, Sec. 111 to
138.) Judge Story says that " agreements made and acts done
" under a mistake of law, are (if not otherwise objectionable)
" 'generally held valid and obligatory. The doctrine is laid
" down in this guarded and qualified manner, because it is not
" to be disguised, that there are authorities which are supposed
" to contradict it, or at least to form exceptions to it." (Id.
Sec. 116.) Chancellor Kent was equally guarded in his state-
ment of the rule, in Storrs v. Baker, (6 Johns. Ch. R. 169,
170.) The Supreme Court of the United States, in Hunt v.
Rousmanier, (8 Wheaton, 214,) while they expressed a decided
affirmation of the general rule, qualified it by the admission
that it was not universal, and that there may be cases in
which mere ignorance of law alone would entitle a party to
relief in a civil matter, on the ground of the presumption of
imbecility, or fraud, which might arise. In noticing this case,
Chief Justice Robertson, in delivering the opinion of the
Court of Appeals of Kentucky in Underwood v. Brockman,
(4 Dana, 309,) where he examines the subject in an elaborate
opinion, says the Court might have added also, the additional
and more conclusive and plain ground of a want of considera-
tion. In South Carolina and Kentucky the universal applica-
tion of the general rule is not admitted. (2 McCord Ch. 455;
2 Bail. 623 ; 1 Hill, Ch. 242 ; 4 Dana, 309.) The review of
the decisions by Judge Story, shows that there are very many
apparent, and he dares not deny that there are some, though
he thinks but few, real exceptions to the general rule ; and
he says they generally stand upon some very urgent pressure
of circumstances. (Story's Eq. Sec. 137.)

The general rule, it has been truly said, is justified by con-
siderations of public policy; and yet so harsh a rule, founded.

upon a presumption so arbitrary, ought to be modified in its application, by every exception which can be admitted without defeating its policy. " If there be, at the time a contract " is entered into, a mistake of the law applicable thereto, which " entirely modifies it, to enforce such an agreement is to cre- " ate a new contract, which was never assented to understand- " ingly, and to impose duties and liabilities, which the party " never contemplated assuming. So, also, if there be a promise, " or an actual performance of a contract, upon the supposition " of liability, that liability becomes the very basis of the con- " tract, and its non-existence being an utter failure of consider- . " ation, an executory or executed contract founded thereupon, " would, by one of the first principles relating to contracts, be " wholly void." (Story on Con. 407, note.)

Admitting the rule that ignorance of the law, with a know- ledge of the facts, cannot generally be set up as a defence, (6 Johns. Ch. R. 169, 170,) there are other elements in the pres- ent case, which bring it within the exceptions, or take it out of the operation of the rule, and entitle the party to relief. It is not a case of mere ignorance of law, unmixed with fraud and ignorance of fact. There was both fraud and ignorance of fact, as well as law. And it has been the constant practice of Courts of Chancery to grant relief, where the case did not depend upon a mere mistake of law, stripped of all other cir- cumstances, but upon an admixture of other ingredients, going to establish misrepresentation, imposition, undue confidence, undue influence, or advantage taken of another's situation. (Story's Eq., 120, et seq. and notes.) There was, in this case, misrepresentation and fraud, if corruptly deceiving one, as to matter of law, amounts to fraud, in a legal sense; and we do not doubt that it may, where, as in this case, advantage is taken of the ignorance of the party. An immigrant arrives in the country, and his first object is to procure a home. He, of course, is ignorant respecting the land titles of the country; and he meets with an old citizen who professes familiarity

with them, and who proposes to sell him land to which he assures him he had a perfectly good title. The immigrant, relies on his superior information, and trusts to his representation; and has he not a right to do so? When one who has had superior means of information, professes a superior knowledge, even of the law, and thereby obtains an unconscientious advantage of another, who is confessedly ignorant, and who has not been in a situation to be informed, is not the injured party as much entitled to relief, on the ground of fraud, as if the misrepresentation were of a matter of fact? We think he is. The plaintiff is not supposed to have had a knowledge of the laws of this State until he came within their influence. Ignorance of the law signifies ignorance of the laws of one's own country; ignorance of the law of a foreign government, is ignorance of fact. (Haven v. Foster, 9 Pick. R. 112, 130.) To deny him relief against a ruinous contract, induced by the misrepresentation of one who professes a knowledge of the subject, and who has been in a situation to be informed, while he has not, and when, if he had been informed, he would not have made the contract, would not only be extremely unreasonable and unjust to the injured party, but it would be giving a premium to the other party for taking advantage of his ignorance. It would be plainly repugnant to good morals and fair dealing. There can be no good reason why the law, in this case more than any other, should suffer one who has no right or title, to retain that which is the property of another.

But the truth or falsehood of the representation did not depend upon a mere question of law; nor would a knowledge of the law alone have enabled the plaintiff to detect its falsehood. He might have known that the land included within the boundaries of the colony was reserved by law from location and pre-emption, and still have been ignorant of the fact that this land was within the bounds of the reserved territory. Whether the defendant had or could make a good title to the land was a question of fact as well as law, no less in this, than

in other cases where there had been a prior appropriation of the land. The misrepresentation, therefore, was of matter of fact, as well as law. The consequence is, that the defendant has obtained the property of the plaintiff without considera- tion, and by means which does not divest the latter of his title, and ought not, on principle, to deprive him of his remedy. We conclude that the plaintiff has stated a case which entitled him to his action to recover back his property or its value ; and that the Court erred in dismissing the petition. The judgment is therefore reversed and the cause remanded.

Reversed and remanded.