## B. R. RAMEY ET AL. *v.* U. G. ALLISON ET AL.

(Case No. 5192.)

1. HOMESTEAD — PRACTICE.— A defendant in trespass to try title, claiming the property as her homestead, alleged that she was a widow with a daughter and four grandchildren living with her as members of her family. *Held:*
    (1) That the claim of homestead right was not sustained by the allegations, and was defective on special demurrer.
    (2) That on demurrer the pleadings are taken most strongly against the pleader, and the allegations did not necessarily import a state of facts constituting the defendant the head of a family in the sense that would exempt her home as a homestead under the constitution and laws; nor did it claim that she acquired her home as the surviving widow of her deceased husband by continuing to hold it after his death.
2. FRAUD — MISTAKE — REPRESENTATIONS — EQUITY.— A widow gave a deed of trust on the premises she was occupying to secure a debt due from her brother and son-in-law. The lot was sold for the debt, and in a suit against her to try title, the widow answered that she was induced to make the deed by the fraudulent representations of the agent, an attorney, of the creditors; that he assured her that the deed was a mere matter of form; that she incurred no risk, since the lot was protected as her homestead, and that the creditors could not, if they would, sell it for the debt. She further alleged that she was only induced to sign it on being satisfied that she incurred no liability, and that it was a mere form. *Held:*
    (1) That the allegations were sufficient to sustain a prayer by the widow for relief against her mistake as to the law when she signed the deed.
    (2) That the representations and circumstances under which they were made, in connection with the difficulty of the point of law involved, entitled her to protection as if the mistake had been one of fact.
    (3) The contract was fraudulently obtained, if the representations were fraudulently made and intended to deceive. If not fraudulently conceived and intended, they were none the less misleading, and induced a fatal mistake on the part of the one relying on their correctness. In either case, the contract was not binding in equity.

(4) If there be, at the time a contract is entered into, a mistake of the law applicable thereto, which entirely modifies it, to enforce such an agreement is to create a new contract which was never assented to understandingly, and to impose duties and liabilities which the party never contemplated assuming.

(5) If there be a promise, or an actual performance of a contract, upon the supposed liability, that liability becomes the basis of the contract, and its non-existence being an utter failure of consideration, an executed or executory contract, founded thereon, would be wholly void. Moreland v. Atchison, 19 Tex., 303.

(6) The misrepresentation of a matter of law does not constitute fraud at law, since all are presumed to know the law; but if a party dealing with another misleads him and takes advantage of his ignorance of his legal rights, equity may exercise its jurisdiction to prevent imposition. Kerr on Fraud & M., 90.

Appeal from Eastland. Tried below before the Hon. T. B. Wheeler.

The statement of the case by appellants' counsel was adopted by the commission of appeals, and is as follows:

On the 25th day of May, 1882, Mrs. U. G. Allison purchased of her brother, O. C. Scarborough, lot No. 2 in block 28, in the town of Ranger, Eastland county. The lot at time of purchase had on it a dwelling and a store-house. At date of purchase Mrs. Allison was a widow with one child, Mrs. M. B. Sanders; Mrs. Sanders was then, and for several years had been, the wife of J. L. Sanders, of which marriage four children were the issue. At the time of marriage it was arranged that all should reside together, and they had ever since so resided; and after the purchase, neither Sanders nor Mrs. Allison acquired other real estate. The store-house in question was used by the son-in-law, Sanders, and O. C. Scarborough, a brother of Mrs. Allison, as a place to carry on their partnership business as retail merchants, until about the 1st of June, 1883, when, among other creditors, Evans & Martin closed the store by attachment. On the 5th of June, 1882, Wray & Stanley, attorneys for the creditors, made an arrangement to extend time to Messrs. Scarborough & Sanders, and lift the attachment, provided they would secure their paper, which was finally accomplished by Mrs. Allison going on their note to Evans & Martin, and securing the same by deed of trust on the lot; the attachments were lifted and time of payment extended until December, 1882. Nothing further was done in the matter until the following August, 1883, when, the note remaining unpaid, the trustee, Frank B. Stanley, duly foreclosed the trust deed and the property was bid in by B. C. Evans for $150. Evans sold the property to A. C. Ramey, August 31, 1883, who in-

stituted suit of trespass to try title and for damages, rents and profits, December 14, 1883, against U. G. Allison and her son-in-law, J. L. Sanders (B. C. Evans joining as warrantor). At the January term, 1884, Sanders answered by exception, demurrer and denial. Defendant Allison answered, setting up a homestead right to the property, and charging that the trust deed was procured by fraud, and asking its cancellation, and to be quieted in her title and possession. Plaintiff amended by withdrawing the name of Sidney Martin, impleaded as plaintiff. It was admitted that title was in Mrs. Allison, unless divested by the proceedings under trust deed, which were admitted to be regular, and divested the title, unless the homestead right was established or there was fraud in procuring the execution of the trust deed. The fraud alleged was that Wray, as attorney for Evans & Martin, in whose favor the trust deed was made, had told Mrs. Allison, in order to procure her signature, that the property was a homestead and could not be sold, and that Evans & Martin would not sell it even if they could; and that he was a lawyer, and that her signing the trust deed was a mere form. To these allegations plaintiffs demurred and denied generally, pleaded want of notice of the fraud, etc., and the case went to a jury under the charge of the court submitting special issues, and they returned a verdict in favor of defendant Allison on special issues (and against her homestead right), saying nothing in regard to Sanders; whereupon judgment was rendered for Allison and against plaintiffs on her cross-bill for affirmative relief, and the deeds were ordered canceled.

*Wray & Stanley*, for appellants, cited: Fish v. Cleland, 33 Ill., 243; Bigelow on Fraud, pp. 8, 11, 12; Martin v. Wharton, 38 Ala., 637; Upton v. Tribilcock, 91 U. S., 45–50; Ogilvie v. Knox Ins. Co., 22 How., 380; Grant v. Grant, 56 Me., 573; Townsend v. Cowles, 31 Ala., 428; Brown v. Rice, 26 Gratt., 467; Cowles v. Townsend, 37 Ala., 77; Gage v. Lewis, 68 Ill., 604; Morrison v. Koch, 32 Wis., 254; Hazlett v. Burge, 22 Ia., 535; State v. Prather, 44 Ind., 287; Fouty v. Fouty, 34 Ind., 433; Hartsville Univ. v. Hamilton, 34 Ind., 506; Long v. Woodman, 58 Me., 49; Pedrick v. Porter, 5 Allen, 324; Jordan v. Money, 54 L. Case, 185.

No briefs for appellees have reached the reporter.

WALKER, P. J. COM. APP.— The first assigned error is, that the court erred in overruling plaintiffs' first special demurrer to defend-

ant Allison's claim of homestead right. This ground is well taken. It devolved upon the defendant, in alleging the facts constituting her homestead right in the premises, to allege such that from them it would appear, *prima facie*, that her right was of that character. The pleading of a party will, on demurrer, be taken most strongly against the pleader, and the allegations that she was a widow, and had living with her a daughter and four grandchildren as members of her family, do not import necessarily a state of facts which will constitute her the head of a family in the sense that will exempt her home as a homestead under the constitution and laws of the state. The daughter and the grandchildren may have occupied a relation to her of independence, which would negative the existence of that *status* between the members constituting the domestic association of those residing in the same domicile, which must subsist in order to attach the homestead characteristics to the premises. See Roco v. Green, 50 Tex., 490; Whitehead v. Nickelson, 48 Tex., 530.

It does not appear from the defendant's answer that Mrs. Allison acquired her home as the surviving widow of her deceased husband, by continuing to hold it after his death; nor does it appear, if it was acquired by her after his death, that she had a family of her own, consisting of children or grandchildren, whose support devolved on her legally or morally, or who were dependent on her for their support. Roco v. Green, *supra*. Whilst the facts that are alleged are consistent with the maintenance of a homestead right upon the hypothesis that certain other facts not alleged exist, it cannot be said that they, of themselves, imply the existence of such other essential facts.

The second ground of error relied on is that the court erred in overruling plaintiffs' second special demurrer to the answer of defendant Allison, in so far as it charged fraud in procuring her to sign the trust deed.

The defendant shows in her answer that at the time she was applied to by Wray, acting as a lawyer and agent in behalf of Evans & Martin, creditors of her brother, Scarborough, and of Sanders, her son-in-law, she supposed and believed, under Wray's representations, that she held and owned the lot in question as her homestead; her answer alleges that Wray assured her that it was her homestead, and could not be affected by the deed of trust; that he was not only a lawyer, and therefore capable of determining a legal matter of that kind, but, representing Evans & Martin as such, they would be bound by his representations. The answer alleges that he disclaimed

any other wish to procure the deed of trust than as a mere formal matter, to be used in exhibiting to said creditors of Scarborough & Sanders that the latter "were wanting to do what was right; and that she, defendant, need have no fear that, by the signing of said trust deed, she would be in any danger of losing her property, or that any efforts would ever be made to subject her said property to the payment of said Scarborough & Sanders' debt." The answer was otherwise replete with allegations of a similar purport showing statements of Wray to the effect that Evans & Martin could not, if they would, render the deed of trust available; that it had no force or legal effect, because the property, being a homestead, would not be bound by it; but that aside from that consideration, "Evans & Martin were not the kind of men that would attempt or want to subject her property to the payment of Sanders & Scarborough's debt."

The answer alleges that she was inexperienced in business affairs, save ordinary duties, and was wholly unacquainted with the character and effect of a deed of trust, and that she was induced by said Wray to rely, and that she did fully rely, upon the representations made by him in signing the note and the deed of trust, believing them to be true, and that Wray was acting in good faith towards her in making said representations and giving her his advice. The answer alleges that she would not have signed said note, nor said trust deed, but for her said belief, and that no attempt would be made to enforce either of them against her. Defendant charges that said representations and advice were fraudulently given to induce her to sign the note and deed of trust, and that said Wray knew or believed that said lot was not her homestead, if, in fact, under the law, it is not her homestead. That Evans & Martin, through their said agent Wray, corruptly and fraudulently procured their agent and attorney, Frank B. Stanley, to be named and appointed in said deed of trust, trustee, and that, under the said power, he did sell the said lot, without her knowledge or consent.

Whether or not the lot in question was, under the laws of the land, the homestead of Mrs. Allison is a legal question, and one, too, the safe judicial answer to which has perhaps been long in abeyance in the professional mind. A few meager constitutional provisions have necessitated judicial interpretation on questions of this kind, as the cases requiring their solution have required, unaided by definite guides afforded by the expression of legislative will. In the meanwhile various speculative opinions on the subject have necessarily been entertained by the profession as to what the law was,

and the people have necessarily been compelled to act on those questions with doubtful and uncertain lights, step by step, until the courts have by slow degrees developed the rules of law that apply accordingly as particular questions on homestead law have been presented for decision.

What persons and classes of persons are embraced under the constitutional homestead exemption the courts have admitted it is difficult to determine.

As late as 1878, Justice Gould, in Howard *v.* Marshall, 48 Tex., 481, passing upon a question of this kind, deplores the want of legislation more fully defining the rights of parties on the subject under consideration. In Whitehead *v.* Nickelson, 48 Tex., 530, Justice Moore recognizes the difficulty existing in the subject.

In this state of the law an inexperienced woman may well be excused from a rigid application of the maxim that holds every man to know the law. She might well yield whatever opinion she entertained on questions of that kind to the judgment and advice of a gentleman learned in the law, and urgently assuring her of his disinterested and unselfish motives in pressing his advice upon her.

The facts of the case presented by the answer show that the deed of trust was made under circumstances of urgent persuasion, and that the most powerful argument brought to bear in obtaining the consent of Mrs. Allison was that she incurred no risk of loss or injury so far, at all events, as the lot on which she lived was concerned. It is equally apparent from the answer that she was only induced to sign it on being satisfied that she incurred no liability, and that its execution was, as represented, a mere form. The case thus made is one of imposition upon her by false and misleading statements concerning the law governing her rights under the contract she was entering into. Although no relation of special trust and confidence existed between herself and Wray, he occupied the position of one supposed to be learned in the law, and, according to the answer, he diverted her mind from the duty of learning for herself as best she might what were her rights in respect to the homestead question from other sources, by admitting the fact that it was her homestead, and that he only wanted the instrument for a purpose wholly foreign to that of a security for the note, and only to show that "the boys were meaning to do right." She had probably previously entertained the same opinion concerning her homestead rights; and, possibly, no doubt on the subject had then occurred to her mind. Thus circumstanced and impressed as to the

legal consequences of signing the deed of trust, her consent was obtained, in the manner stated, to execute an instrument of writing which she was made to believe was wholly inoperative, and was intended to be used for no such purpose as its terms expressed; in a word, that it was to be but a mock deed of trust. It is now sought to be made a real one; but this cannot be done.

Mrs. Allison seeks in her answer to be relieved against her mistake as to the law when she signed the deed of trust. That mistake was superinduced by representations made to her under circumstances, taking into consideration the nature of the legal question involved, which entitle her to protection the same as if the mistake had been as to matters of fact. Her mistake resulted, according to the answer, from the fraudulent and misleading representations made to her as to the state of the law in respect to the vital consideration on which alone she could have been induced to sign the instrument; the case made being one of imposition practiced by a lawyer upon the confiding credulity of a woman inexperienced in law or business affairs. Her ignorance of the law, and his superior acquaintance with it, enabled him to induce her to sign an instrument having the reverse legal effect of that which he had asserted it to possess, and which she supposed it would have. A contract obtained in such a manner is fraudulently obtained, if the representations were fraudulently made and intended to deceive; if not thus fraudulently conceived and intended, they are not the less misleading and inducing a fatal mistake on the part of the party relying on their correctness. In either case, the contract is not that of a person giving consent to it under circumstances that will render it binding in equity. The principles of law laid down in Moreland v. Atchison, 19 Tex., 309, are entirely applicable to this case, which see. Justice Wheeler, delivering the opinion in that case, says: "The general rule, it has been truly said, is justified by considerations of public policy; and yet so harsh a rule, founded upon a presumption so arbitrary, ought to be modified in its application by every exception which can be admitted without defeating its policy. 'If there be, at the time a contract is entered into, a mistake of the law applicable thereto, which entirely modifies it, to enforce such an agreement is to create a new contract which was never assented to understandingly, and to impose duties and liabilities which the party never contemplated assuming. So, also, if there be a promise, or an actual performance of a contract, upon the supposition of liability, that liability becomes the very basis of the contract, and its non-existence being an utter failure of consideration, an executory or executed

contract founded thereupon would, by one of the first principles relating to contracts, be wholly void.'" Story on Con., 407, note.

Applying this doctrine to the defense here set up, we are of the opinion that the court did not err in overruling the special demurrer referred to in the second assigned error. See Shelby v. Burtis, 18 Tex., 651; Lott v. Kaiser, 61 Tex., 671; Varner v. Carson, 59 Tex., 306, 307; Kerr on Fraud and Mistake, p. 69. Kerr thus succinctly states the doctrine: "A misrepresentation of a matter of law does not constitute fraud at law, because the law is presumed to be equally within the knowledge of all the parties. Thus, the misrepresentation of the legal effects of a written agreement which a party signs with a full knowledge of its contents is not a sufficient ground at law for avoiding the agreement. But if a man dealing with another misleads him, and takes advantage of his ignorance respecting his legal position and rights, though there may be no legal fraud, the case may come within the jurisdiction exercised by courts of equity to prevent imposition." Kerr on Fraud and M., p. 90. A misrepresentation as to the legal effect of an instrument may be fraudulent. Colter v. Morgan, 12 B. Monr., 278; and see Townsend v. Cowles, 31 Ala., 428; Drew v. Clark, Cooke (Tenn.), 374; Broadwell v. Broadwell, 1 Gilman, 595.

The appellants assign several grounds of error based on the overruling by the court of other of their special demurrers to the defendant's answer. The brief of counsel refers us to no authorities in support of their propositions, and from such consideration as we have given them we do not think they are well taken. Besides these, there are ten other grounds of assigned error specified in the brief of appellants' counsel, and no brief of the appellee's counsel has reached our hands. None of these grounds are supported by the citation of authorities, although the questions presented in them are of a character that admit of references to authorities bearing upon them if counsel had seen proper to comply with rule 36 for the supreme court practice. See 47 Tex., 604. We have given due consideration, however, to all the questions presented in the brief, and without entering upon a discussion or even a statement of them *seriatim*, we will content ourselves with stating our conclusion upon the whole case to be that there is no error for which the judgment ought to be reversed, and therefore report to the supreme court, from which this cause was referred, that the judgment ought to be affirmed.

AFFIRMED.

[Opinion adopted December 18, 1885.]