**A. A. A. REALTY COMPANY, Appellant,**

v.

**Jas. F. NEECE, Appellee.**

No. 15899.

Court of Civil Appeals of Texas.

Fort Worth.

May 9, 1958.

Rehearing Denied June 13, 1958.

House, Mercer & House, and James D. Cunningham, San Antonio, for appellant.

Nelson, Montgomery, Robertson & Sellers, and Lee Sellers, Wichita Falls, for appellee.

BOYD, Justice.

This is an appeal from a take nothing judgment in a suit filed by A. A. A. Realty Company against Jas. F. Neece for damages for the alleged breach of an exclusive listing agreement authorizing the sale by appellant of a motel owned by appellee.

There was an appeal from a summary judgment for appellee, which judgment was reversed. A. A. A. Realty Company v. Neece, Tex.Civ.App., 292 S.W.2d 811, Neece v. A. A. A. Realty Company, Tex., 299 S.W.2d 270.

Appellee signed three listing cards. See opinion, Tex.Civ.App., 292 S.W.2d 811, for facsimile reproduction of the cards.

The first card read as follows:

"Open Listing Agreement
"No. Days? ........
 "Date: June 30, 1955
 "Catalina Motel
 "I, (or we) agree to pay A. A. A. Realty Co. 7% of the sale price, (if they sell said property), and to protect them on their prospects or anyone that they are instrumental in property being sold to.

"Sale Price $410,000.00"

The second and third cards were dated August 19, 1955, the third being executed because it was thought the second was signed in the wrong place. The only material difference between them and the first was that they began: "Exclusive Listing Agreement No. Days? Six Months" and the writing, "Open Listing Agreement No. Days? ......" did not appear on either.

Appellant advertised the property for sale and the jury found that it had reasonably incurred $2,500 in expenses in trying to sell. On September 21, 1955, appellee, through Knapton's Business Brokers of Oklahoma City, sold the motel to a person other than one of appellant's prospects.

Appellee alleged that: there was a prior exclusive listing on the property with Knapton's Business Brokers and that appellant accepted its listing subject thereto, and for that reason appellant's listing could not be exclusive; appellee signed the August 19 listing in the mistaken belief that Knapton's listing had expired; the prior listing was for a sales price of $385,000 and appellant's agent Andrews suggested that appellant's listing be for $410,000 to protect Knapton's if appellant sold the property; Andrews told appellee that appellant wanted a listing which would guarantee to it the exclusive right to any commissions from a sale by it or by another to its prospect, and explained that the new agreement meant that appellant "would be protected against having to split any commission it might earn" with Knapton's, and if appellant sold the property it would have the "*exclusive* right to receive the *full* commission on such sale"; from such representations, appellee understood that appellant "would have the exclusive right to the full commission resulting from a sale of the property, *if the plaintiff* actually sold the property, and that the plaintiff would be protected as to the commission if a sale was made by any other party to one of plaintiff's prospects"; Andrews had knowledge of appellee's interpretation of the contract; if appellee's interpretation was not correct, there was no valid contract because it resulted from the mutual mistake of the parties; Andrews fraudulently represented that there would be no obligation upon appellee for a commission unless a sale was made by appellant or to its pros-

pect; appellee relied upon all such representations and but for them would not have signed the contract.

In his motion for summary judgment, appellee alleged that the only agreement between the parties was shown by the three cards.

The jury found that: the listing agreement shown by the August 19 cards was not an exclusive listing agreement; the three listing cards constituted the only agreement between the parties; before the card was signed on August 19, appellee told Andrews that he felt sure that Knapton's listing had expired; appellee knew then that it had not expired; Andrews did not believe appellee when he said it had expired; Andrews knew, or by the use of ordinary diligence would have learned, that it had not expired; when appellee signed the August 19 card he understood the listing agreement to mean that he would not owe appellant a commission unless it sold the property or it was sold to one of its prospects; appellee understood that if Knapton's sold the motel under its prior listing he would not owe appellant a commission; Andrews so understood the listing agreement; Andrews knew that appellee understood that he would not owe appellant a commission unless appellant sold the property or it was sold to its prospect; he knew that appellee understood that if Knapton's sold the motel under its prior listing, no commission would be owed appellant; appellee would not have signed the August 19 card but for such understanding of the listing agreement; and prior to the signing of the August 19 listing card, Andrews did not represent to appellee that appellant did not intend to claim a commission thereunder unless it actually sold the property or it was sold to its prospect.

According to appellee's testimony, Andrews told him on August 19 that in order to sell the motel appellant would be required to expend a great deal of money in advertising, and that appellant wanted an exclusive listing; appellee told Andrews he would not give an exclusive listing because he did not know if Knapton's contract "has run yet or not, and even if it was, I wouldn't take it away from Knapton's * * *"; Andrews said, " 'Well, I really feel you don't fully understand what we mean by exclusive contract'.

"Q. Then what did Mr. Andrews—A. Then he pointed out this card to me and he said, 'All we want is a guarantee that if we sell the Catalina Motel or if it is sold by anyone else to one of our clients, we are to collect the entire commission'. * * * A. He pointed out on this card— * * *

"Q. Now, here is the card. Point out the language he pointed out to you on the card on that occasion. A. (indicating) The first two lines there, 'I, (or we) agree to pay A. A. A. Realty Company 7% of the sale price, (if they sell said property)'. That is the thing he pointed out to me, or if it was sold to any one of their prospects"; when Andrews made that explanation of the card, appellee interpreted it to mean that appellant would be entitled to receive a commission only if they sold the property themselves or it was sold to one of their prospects, or any one they were instrumental in the property being sold to; it was appellee's understanding, based upon Andrews' representation, that the listing did not preclude the sale of the motel by Knapton's through its prior listing; except for that understanding he would not have signed the card; and he told Andrews before he signed the second card that he "felt sure" Knapton's listing had expired.

On September 19, 1955, appellee wrote Andrews: "I was dumfounded this morning to have Mr. Gentry with Knapton's at Oklahoma City come down with a party to see the Motel. As I told you at the time you were here, I felt sure their time had expired, * * *."

Andrews denied making any representations to appellee except that he told appellee "when he gave me the exclusive listing that during the duration of our listing

agreement, six months, we would get paid our commission regardless of who sold the motel; if it were sold, regardless of who sold it, we would be entitled to a commission."

Appellant's motion for instructed verdict and motion for judgment were overruled. Appellant contends that appellee's defense of mistake was not properly pleaded, and was not established by the evidence or the verdict.

■ Having found that the three listing cards constituted the only agreement between the parties, we think the jury's further finding that the agreement of August 19 was not an exclusive listing agreement must be disregarded. There is no contention that the contract is ambiguous; and the construction of an unambiguous contract is for the court. The court cannot confide it to the decision of the jury. City of San Antonio v. Lewis, 9 Tex. 69. As a rule, it cannot be claimed that its terms, or its legal construction and effect, do not accord with the previous understanding of the parties. 10 R.C.L., p. 1046, sec. 240; Henderson v. Scott Oil & Refining Co., Tex.Civ.App., 258 S.W. 1082; Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217; Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47; Henry v. Phillips, 105 Tex. 459, 151 S.W. 533; Richardson v. Hart, 143 Tex. 392, 185 S.W.2d 563; Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004; Tower Contracting Company v. Flores, Tex., 302 S.W.2d 396; Reagan v. Bruff, 49 Tex.Civ.App. 226, 108 S.W. 185.

Appellee testified that the first listing was an open one. The parties changed that by the second and third cards, and made them read, "Exclusive Listing Agreement," eliminating the words, "Open Listing Agreement." In our opinion, the second and third cards constitute an exclusive listing agreement, in the sense that "exclusive" means "shutting out all others from a part or share" (The American College Diction-

ary), and "Possessed and enjoyed to the exclusion of others" (Webster's New International Dictionary).

Appellee testified that when he signed the second card he understood that he would not owe appellant a commission unless it sold the property or it was sold to its prospect; that he would not owe appellant a commission if Knapton's sold the property; and that he would not have signed the card but for such understanding. But it seems that the findings as to what Andrews understood about the legal effect of the contract, or what he understood about appellee's interpretation of it, run counter to the finding that Andrews did not represent to appellee that appellant did not intend to claim a commission unless it actually sold the property or it was sold to one of its prospects. This was the only issue submitted as to any representation by Andrews. There was no issue and no finding that appellant accepted the listing subject to Knapton's. There is no evidence that Andrews understood the contract to be that if Knapton's sold the property appellee would not owe appellant a commission. Indeed, appellee in his brief admits that "Nowhere in the testimony does Neece purport to give the understanding or interpretation Andrews placed on the instrument." And it is not clear how appellee could have understood that if Knapton's sold the property he would not owe appellant a commission since he alleged that he signed with appellant "in the mistaken belief that his prior exclusive listing with Knaptons had theretofore expired." It is true that he said Andrews told him that " 'All we want is a guarantee that if we sell the Catalina Motel or if it is sold by anyone else to one of our clients, we are to collect the entire commission.' " But the statement was denied by Andrews, and the issue was not submitted to the jury.

This is not a suit for a "commission," but for damages for breach of contract. Regardless of what either or both parties understood about liability for a commission, there is no contention that Andrews repre-

388

sented that appellant would not claim damages if appellee sold the motel through another agency.

We understand appellee's contention to be that if his interpretation of the contract be incorrect, it is invalid because it resulted from the mutual mistake of the parties. But what were they mistaken about? The jury said appellee knew that Knapton's listing had not expired. Their finding that Andrews knew, or by the use of ordinary diligence would have learned, that it was still in effect, would, if it had support in the evidence, have established that Andrews was not mistaken about the status of Knapton's listing; but it has no support. Appellee said he searched his files for his copy, and he could not find it. There is no evidence that Andrews would have been more successful, or that he disbelieved appellee's statement that he "felt sure" it had expired, although the jury did not believe it. There is no suggestion that anything appears in the writing which the parties agreed to leave out, or that anything was left out which they agreed to put in.

 If the mistake be one of law, in that appellee misunderstood the legal effect of the writing, there is no finding that Andrews induced it; and if there were such finding, we would encounter the rule that ordinarily a representation as to the law is regarded as merely an expression of opinion and will not relieve from the obligations of a written contract. There are recognized exceptions to this rule, such as a mistake induced by an abuse of fiduciary relations, or a misrepresentation by one having a superior knowledge of the law to obtain an unconscionable advantage of one who is ignorant, or a misrepresentation of the legal effect of an instrument made to one who is not in an equal position to know. Corbett v. McGregor, 62 Tex.Civ.App. 354, 131 S.W. 422, writ refused; Little v. Allen, 56 Tex. 133; 3 Pomeroy's Equity Jurisprudence, 5th Ed., sec. 843; Yantis v. Jones, Tex.Civ.App., 184 S.W. 572; Ramey v. Allison, 64 Tex. 697.

"If an agreement or written instrument or other transaction expresses the thought and intention which the parties had at the time and in the act of concluding it, no relief, affirmative or defensive, will be granted with respect to it, upon the assumption that their thought and intention would have been different if they had not been mistaken as to the legal meaning and effect of the terms and provisions by which such intention is embodied or expressed, even though it should be incontestably proved that their intention would have been different if they had been correctly informed as to the law." 3 Pomeroy's Equity Jurisprudence, 5th Ed., sec. 843.

" 'Thus, the misrepresentation of the legal effects of a written instrument which a party signs with a full knowledge of its contents is not a sufficient ground at law for avoiding the agreement. But if a man dealing with another misleads him, and takes advantage of his ignorance respecting his legal position and rights, though there may be no legal fraud, the case may come within the jurisdiction exercised by courts of equity to prevent imposition.' " Ramey v. Allison, 64 Tex. 697.

Regardless of the findings as to how either or both understood the writing, or what Andrews knew of appellee's interpretation of it, there was no finding, no evidence, and no allegation that any fiduciary relation existed, or that Andrews had a superior knowledge of the law, or knew any more about the legal effect of the instrument than did appellee. Appellee had had forty years of varied business experience; he had bought, operated, and sold a number of motels; he had executed several exclusive listing agreements; Gentry, of Knapton's, sold four of his motels, and had an exclusive listing on each; appellee said he knew what an exclusive listing meant; it meant, he said, "They carried the sole right to sell that motel and it wasn't listed with another broker."

Essentially, appellee's position is that he was misled as to the legal effect of the contract by representations of Andrews as to

what the contract meant. It is significant that the only issue submitted as to Andrews' representations was answered against appellee.

 The judgment must conform to the verdict. Rule 301, Texas Rules of Civil Procedure. The verdict being that Andrews did not represent to appellee that appellant would not claim a commission unless it sold the property or it was sold to its client, we think appellee's defense fails. All the other findings of the jury as to how either party interpreted the contract, as well as the finding that the listing was not an exclusive one, whether supported by evidence or not, amounted only to findings as to the legal effect of the contract, and did not resolve any fact issues upon which a judgment may be based. Speer, Law of Special Issues, sec. 37; Norman v. Stark Grain & Elevator Co., Tex.Civ.App., 237 S.W. 963, writ refused; Soell v. Haddon, 85 Tex. 182, 19 S.W. 1087. A judgment should be grounded on material findings, notwithstanding immaterial findings apparently in conflict therewith. Gowan v. Reimers, Tex.Civ.App., 220 S.W.2d 331; Jones v. Winter, Tex.Civ. App., 215 S.W.2d 654; Kelley v. Ward, 94 Tex. 289, 60 S.W. 311; 41–B Tex.Jur., p. 496, sec. 403, and authorities there cited.

There being no finding that the parties agreed that appellant's contract was subject to Knapton's listing, the latter would not necessarily prevent recovery by appellant. Neece v. A. A. A. Realty Co., Tex., 299 S.W.2d 270.

From a consideration of the contract, the verdict, and the evidence, it is our opinion that appellee's defense of mistake has not been established. It follows that we think judgment should have been for appellant.

In Park v. Swartz, 110 Tex. 564, 222 S.W. 156, in a suit for damages for breach of an exclusive contract, it was said: "The loss suffered by the plaintiff is the measure of his damages. That loss is the amount as fixed by the contract which he would have earned but for the wrongful conduct of the defendants in preventing him from earning it. Upon establishing the contract, his readiness and willingness to perform it, and that he was denied opportunity to perform it through its wrongful breach by the defendants, rendering its performance by him impossible, the plaintiff made out his case; * * *." See, also, Sanderson v. Sanderson, 130 Tex. 264, 109 S.W.2d 744; Pickett v. Bishop, 148 Tex. 207, 223 S.W.2d 222; Lewis v. Smith, Tex.Civ.App., 198 S.W.2d 598; Holmes v. Holik, Tex.Civ. App., 238 S.W.2d 260. Had appellant sold the property it would have earned $28,700.

The judgment is reversed and rendered for appellant for $28,700.