**CITY OF SAN ANTONIO, Appellant,**

v.

**Jean ROSOW, Appellee.**

**No. 13–86–086–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 29, 1986.

Rehearing Denied Oct. 9, 1986.

**634**

Crawford B. Reeder, Asst. City Atty., San Antonio, for appellant.

James M. Heidelberg, San Antonio, for appellee.

Before NYE, C.J., and SEERDEN and UTTER, JJ.

## OPINION

UTTER, Justice.

The City of San Antonio appeals from a jury verdict which found that appellee was "arbitrarily and capriciously" terminated from her job. The jury awarded her $237,-335.70. The trial court ordered the City to reinstate appellee "to a position of like status and pay." We reverse and render the judgment of the trial court.

Appellee was employed by the City as an "Administrative Assistant V." This was a "classified" civil service position. On May 15, 1980, Mr. Fox, appellee's supervisor, gave appellee written notice of termination, in compliance with the Municipal Civil Service Rules of San Antonio. Reasons given for her termination were, "acts of incompetency, discourtesy by said employee to the public or to fellow employees ... and conduct prejudicial to good order...." Pursuant to the Civil Service Rules, appellee appealed her termination to the Municipal Civil Service Commission. Section 3 of the Municipal Civil Service Rules of the City of San Antonio provides:

> Any employee in the Classified Service may be suspended, demoted, or removed by the City Manager or officer having authority to appoint. Written notice of suspension, demotion or removal, stating the reasons therefor and when it is effective, shall be given to such person or sent by registered or certified mail to the employee's usual place of residence. Such person, within ten (10) working days after the receipt of such notice, may appeal in writing to the Commission for a hearing. ... Within forty-eight (48) hours after the completion of the public hearing, the Commission shall report its findings and recommendations to the City Manager, whose action shall be final.

A hearing was held, resulting in the Commission recommending that the City Manager reinstate her. The City Manager disregarded the Commission's recommendation and approved the termination of appellee.

Appellee filed this suit alleging, *inter alia*, that her termination was "arbitrary, capricious, an abuse of discretion and a violation of the San Antonio City Charter and the [Civil Service] Rules." She further

contends that she was denied her right to due process.

Appellee contends that this case is not "in the nature of a judicial review of an administrative decision," but rather was a suit for the violation of her "state and federal constitutional rights to due process, liberty, and free speech." We disagree with appellee's characterization of the nature of this case. As has often been said, we must look through form to substance in order to determine the true nature of the cause of action. No matter what label is applied, appellee cannot escape the inevitable conclusion that what she sought by her suit was in fact a review of her termination, reinstatement, and back pay. *See Martine v. Board of Regents,* 578 S.W.2d 465, 474 (Tex.Civ.App.—Tyler 1979), *appeal after remand,* 607 S.W.2d 638 (Tex. Civ.App.—Austin 1980, writ ref'd n.r.e.).

█ The right to appeal from an action of an administrative party or an appeals board exists only where expressly provided for by statute or ordinance, or where the administrative action complained of violates a constitutional right or deprives one of a vested property right. *City of Amarillo v. Hancock,* 239 S.W.2d 788 (Tex.1951); *McFadden v. Gideon,* 639 S.W.2d 43 (Tex. App.—El Paso 1982, writ ref'd n.r.e.).

█ There are no provisions in the Civil Service Rules nor in the City Charter for judicial review of the City Manager's decision to terminate a "classified" civil servant. However, appellee did allege, in her Sixth Amended Original Petition, that the Civil Service Rules and the City Charter created in her an expectation of continued employment sufficient to constitute a vested property right. Appellee clearly had a vested property right in her job. The Civil Service Rules set forth eighteen grounds for removal. As long as appellee did not violate any of those enumerated provisions, she had an expectation of continued employment. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Bueno v. City of Donna,* 714 F.2d 484 (5th Cir.1983); *Davis v. Nuss,* 432 F.Supp. 44 (S.D.Tex.1977). Since appellee was deprived of a vested property right by administrative action, she has an "inherent right" to judicial review. *Martine v. Board of Regents,* 578 S.W.2d at 472. We therefore determine that the nature of this case is that of an appeal from an administrative action, and that appellee had the right to appeal.

The administrative action for review before the trial court, as well as this Court, is the decision of the City Manager to approve the termination of appellee's employment, not the recommendation to reinstate her made by the Civil Service Commission.

By its second point of error, the City alleges that the trial court erred in holding that there was no substantial evidence to support the decision by the City Manager to approve the discharge of appellee from her employment. Judicial review of administrative actions is governed by the substantial evidence rule. *Martine v. Board of Regents,* 578 S.W.2d at 473. *See also Texas Health Facilities Commission v. Charter Medical-Dallas, Inc.,* 665 S.W.2d 446, 452 (Tex.1984); *Firemen's and Policemen's Civil Service Commission v. Brinkmeyer,* 662 S.W.2d 953, 955–56 (Tex.1984).

The substantial evidence rule is a method of judicial review designed to "keep the courts out of" the decisions of administrative agencies, but still insure that "justice is administered" to those affected by the agency decisions. *See Lewis v. Metropolitan Savings and Loan Ass'n,* 550 S.W.2d 11 (Tex.1977). It is the duty of the court to determine, based on the record made in the trial court, whether there was in existence at the time of the administrative action, evidence of a substantial nature reasonably supporting the order. *Mercer v. Ross,* 701 S.W.2d 830 (Tex.1986); *Firemen's and Policemen's Civil Service Commission v. Brinkmeyer,* 662 S.W.2d at 956; *Heard v. Incalcaterra,* 702 S.W.2d 272 (Tex.App.— Houston [1st Dist.] 1985, no writ). In this case, we are to determine whether the City Manager's decision is supported by substantial evidence in the record viewed as a whole. *See Texas Alcoholic Beverage Commission v. Wines of Germany and*

*the World, Inc.*, 691 S.W.2d 817 (Tex.App.—Houston [1st Dist.] 1985, no writ); *Board of Regents v. Martine,* 607 S.W.2d at 640.

The Supreme Court has summarized the criteria applicable to a review under the substantial evidence rule as follows:

In applying the test, the court is prohibited from substituting its judgment for that of the agency as to the weight of the evidence on questions committed to agency discretion.

Although substantial evidence is more than a mere scintilla, the evidence in the record actually may preponderate against the decision of the agency and nonetheless amount to substantial evidence. The true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency. Thus, the agency's action will be sustained if the evidence is such that reasonable minds could have reached the conclusion that the agency must have reached in order to justify its action.

The findings, inferences, conclusions and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise. Hence, if there is evidence to support either affirmative or negative findings on a specific matter, the decision of the agency must be upheld.

*Texas Health Facilities Commission v. Charter Medical-Dallas, Inc.,* 665 S.W.2d at 452–3.

The issue before the trial court, whether the administrative action is reasonably supported by substantial evidence, is strictly one of law. *Firemen's and Policemen's Civil Service Commission v. Brinkmeyer,* 662 S.W.2d at 956; *Martine v. Board of Regents,* 578 S.W.2d at 473. Due to a failure to correctly characterize this case as an appeal from an administrative action governed by the substantial evidence rule, the following special issue was submitted to a jury:

Do you find from a preponderance of the evidence that [the City Manager] acted *arbitrarily and capriciously* in terminating the employment of Plaintiff, Jean Rosow? [emphasis ours]

Our Supreme Court has discussed the meaning of "arbitrary and capricious" action as it relates to the substantial evidence rule:

Throughout the long history of the substantial evidence rule the existence of substantial evidence has been equated with fair and reasonable conduct on the part of the agency. Conversely, agency decisions that are unsupported by substantial evidence have been deemed arbitrary and capricious. Thus, the two terms have many times been considered two sides of the same coin.

*Texas Health Facilities Commission v. Charter Medical-Dallas, Inc.,* 665 S.W.2d at 454.

■ The Supreme Court noted one instance where an agency's action could be supported by substantial evidence and nonetheless be arbitrary and capricious. That instance occurs "when a denial of due process has resulted in the prejudice of substantial rights of a litigant." *Id.* In her pleadings, appellee contends that she was denied due process by the City Manager's "disapproval" of the Civil Service Commission's recommendation. She does not assert that she was denied due process at the hearing before the Civil Service Commission. Nor would such a contention be meritorious. The Civil Service Rules and the City Charter provide that the Civil Service Commission has "the power to administer oaths and affirmations, and to compel the attendance of witnesses and other persons by subpoena … and to compel the production of all pertinent records." At the hearing, "the appellant shall have the right to appear and be heard in person or by counsel." Appellee states in her brief that the hearing lasted for three days "at which time all evidence relating to her alleged misconduct was presented to the Commission." Appellee was afforded all that due process requires at the hearing.

*See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, (1972); *Jordan v. City of Lake Oswego,* 734 F.2d 1374 (9th Cir.1984); *Bueno v. City of Donna,* 714 F.2d 484 (5th Cir.1983).

■ In the instant case, we find that the trial court improperly submitted to the jury the only question to be decided; *i.e.,* whether the City Manager's decision was supported by substantial evidence, or put another way, whether that decision was arbitrary and capricious. This was a question of law for the trial court. Although the City did not object to the submission of this question of law to the jury, we find that the jury's finding on such an issue is immaterial and cannot, as a matter of law, be the basis of a judgment. *See generally, City of San Augustine v. Roy W. Green Co.,* 548 S.W.2d 467 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Leggio v. Millers National Insurance Co.,* 398 S.W.2d 607 (Tex.Civ.App.—Tyler 1965, writ ref'd n.r.e.); *A.A.A. Realty Co. v. Neece,* 314 S.W.2d 384 (Tex.Civ.App.—Forth Worth 1958), *rev'd on other grounds,* 159 Tex. 403, 322 S.W.2d 597 (1959); *Jones v. Winter,* 215 S.W.2d 654 (Tex.Civ.App.—Amarillo 1948, writ ref'd n.r.e.).

In any event, the trial court made an independent finding that "substantial evidence did not exist to terminate the employment of Jean Rosow." That finding is properly before us and is subject to review under the criteria previously set forth.

■ Appellee was terminated for alleged acts of incompetency, discourtesy to the public or to a fellow employee, and conduct prejudicial to good order. The record reveals four distinct bases upon which the City Manager could have decided to approve appellee's termination. The four bases are: (1) certain acts of discourtesy to Amerigo Canales, an employee under appellee's direct supervision; (2) general complaints from various employees regarding appellee's "behavior as a supervisor"; (3) a problem concerning access to the petty cash fund; and, (4) the relationship between appellee, Robert Hunter, the Planning Director, and Al Eisenmenger, the

Assistant Planning Director. Our duty is to review the record to determine whether the trial court erred in finding that the City Manager did not have substantial evidence upon which to base his decision to terminate appellee's employment.

Thomas Huebner was the City Manager at the time of appellee's termination. He had been City Manager since 1977. Between 1978 and 1979, Huebner became aware of an "uncommon number of problems relating to the Planning Department." Huebner testified, "It was an unusual situation and a serious one, and one in which in discussion with my assistants and several department heads, we concluded that we ought to try what is called organizational development in an effort to solve the problems that existed in that department." An "organizational development survey" was conducted upon the employees in the Planning Department which indicated generally poor morale and a dissatisfaction with the supervisors. This survey was introduced in evidence and was identified by Huebner as a portion of the record upon which he based his decision to terminate appellee. For nearly a year, Huebner worked with Hunter and the Planning Department in an effort to solve the problems there.

Huebner further testified that:

We [the Assistant Manager, Lou Fox, and Leroy Harvey, the Personnel Director, and Huebner] discussed the progress of the organizational development in the Planning Department. And, again, I think this is in my deposition, at one point after a few months we thought we were making headway and things were getting better, and then after another three, four or five months, it was fairly obvious that we had a most serious problem and it was not being resolved.

During this time, Huebner received complaints from eight Planning Department employees "that came to see [him] because of their problems within the Department— all of the complaints stem back to three people, Bob Hunter, Al Eisenmenger and Jean Rosow." Eventually, Huebner determined that it was necessary to remove

Hunter from the position of department head.

Canales, one of the employees who complained to Huebner, held the position of Administrator I in the Planning Department and appellee was his immediate supervisor. Canales testified that appellee "was always monitoring my time." He said that she asked him to maintain a detailed list of his daily activities, even "the time that I ... go to the restroom and say how long I stay in the restroom." He said that he was caught in the familiar trap of "too many chiefs and not enough indians." Once, because of multiple assignments from different "chiefs," Canales was late in completing an assignment for appellee and was reprimanded.

Canales also related an incident where a co-worker asked Canales to assist him with an assignment. Canales told him that he was busy with a job for appellee and couldn't abandon it without her permission. The co-worker then said, "well, if you don't want to do it just go to hell." Canales went to appellee and explained what had happened, whereupon appellee told Canales that he just "had to take it." He said that he felt that there was no point in going to Mr. Hunter with a complaint about appellee because "he always would take Mrs. Rosow's side."

Another incident involved a memorandum from appellee to Canales. Appellee had requested that Canales prepare a written summary of his job description. When Canales had not completed the assignment by the time appellee felt it should be done, appellee sent a memo to him. Appellee stated in the memo:

I have attempted to write a job procedure describing the primary activities of attendance records processing. Although I am not as intimately involved with these activities as you are, I am generally familiar with the process. So I sat down and wrote my thoughts when I had a few spare moments. Attached is a copy of the procedure I developed. It took me 10 minutes to write this. I wrote it while waiting for a seminar to start. I realize that you cannot be expected to produce a document as quickly as I, but I do think that an Administrative Assistant I, being more familiar with the process, should be able to produce a reasonable document in at most four (4) times the amount of time it could take me—40 minutes. Thus, I think it is reasonable for me to expect you to be able to produce at least a limited job procedure in about 40 minutes.

I realize that you have had many duties and tasks in the 11 work days since the assignment was made. You have also been out sick for three (3) days. However, you have also asked for and received an hour of compensatory time, for personal business and one hour of time to go to CETA offices and have been observed by me on several occasions as not being particularly busy. It is my opinion that in the eight (8) days you have been at work since the assignment, you could have found 40 minutes to complete an assignment. Therefore, I can only conclude that you have chosen not to complete the assignment without discussing the decision with me.

Canales testified that this memo humiliated him. Huebner testified that this memo "is an example of a supervisory attitude that I think is intolerable. You do not elicit support and cooperation of rank and file employees by belittling them, and I consider that memorandum abusing the employee."

Earl Campbell was an accountant with the Planning Department. His office was across the hall from appellee's office. He testified that he witnessed an unspecified number of "occasions" in which it was obvious that Canales was "being chewed out" by appellee in the presence of at least one other employee.

Campbell also related an incident with the petty cash fund. He was responsible for maintenance of the fund. Campbell testified that one time a package was delivered to appellee at the office, and the receptionist told Campbell to pay for the package out of petty cash ($8.97). The

package turned out to be printed labels for her personal use. Appellee reimbursed the fund the next day.

Prior to this incident, Campbell became aware of a practice of appellee and the executive secretary going into the petty cash fund to make purchases when he was absent. He pointed this out in a memo to the internal auditor, explaining that "no one is to have access to petty cash unless expressly authorized in writing by the Department Director to the Director of Finance." Two days later, Hunter authorized appellee to have access to the petty cash fund.

Huebner related the importance of the petty cash incident as follows:

> Well, I think if you review the record and for instance her treatment of Amerigo Canales on failing to get an assignment done on time, something—she was something of being a stickler for the rules, and yet in this instance the rules were violated and after it was brought to the appropriate authorities['] attention, then the Department Head sent a memo saying yes, she is authorized to make use of the petty cash fund, which is indicitive of the relationship that she had with the Department Head, and I think shows one attitude towards the rules with respect to herself, and another towards the other employees.

Huebner further testified that he viewed appellee as "a person with a double standard."

Louis Fox was appointed as acting Planning Director after Hunter was dismissed. Fox testified that many of the Planning Department employees "were real disturbed" that appellee had not also been dismissed along with Hunter. Fox met with appellee and told her that "men and women were complaining about her presence, that they didn't trust her. They felt that she had been the person that Bob Hunter used to do 'dirty work' in this department, and that she was causing a lot of problems."

Fox also testified that even prior to Hunter's dismissal, and while Fox was Assistant City Manager, several Planning Department employees came to him with complaints about Hunter, appellee and Eisenmenger.

Huebner said that Eisenmenger's "performance changed dramatically when Bob Hunter was dismissed. He no longer was a problem that people were complaining about prior to Hunter's dismissal."

One of the findings of the Civil Service Commission was that, "[t]he procedures for dismissal of Mrs. Rosow did not follow from a steady progression of counseling and reprimands." Hunter was appellee's supervisor. Any disciplinary action directed toward appellee would have had to come from him. In this regard, Huebner testified as follows:

> The obvious ... point there is that her supervisor was Bob Hunter, a department head who I had fired because of his totally unacceptable style of management, and she was carrying out for him his directives as department head. Of course there would be nothing in her record under Bob Hunter that said there was anything wrong with her, and in fact, I would imagine it's very laudatory.

Portions of the evidence which we have set forth above are sufficient to infer that appellee and Hunter, as well as possibly Eisenmenger and the executive secretary, were involved in what could be called a "mutual admiration society," thus plausibly explaining the lack of progressive disciplinary action in appellee's personnel file.

Again, under the substantial evidence standard of review, we are not to substitute our judgment for that of the agency as to the *weight* of the evidence, nor are we concerned with whether the agency reached the *correct* conclusion. Further, even though the evidence may preponderate *against* the agency's action, the agency's decision must be upheld if reasonable minds *could* have reached that decision. *Texas Health Facilities Commission v. Charter Medical-Dallas Inc.*, 665 S.W.2d at 453. We therefore hold that, under the standard of review which we are required

**640**

to apply, there exists substantial evidence to uphold the decision of the City Manager to terminate appellee's employment. Point of error number two is sustained.

Due to the disposition of the City's second point of error, it is unnecessary to address its remaining points. TEX.R. CIV.P. 451. The judgment of the trial court is REVERSED and RENDERED that appellee take nothing.